928 So.2d 1089 (2005)
Mark Allen DAVIS, Appellant,
v.
STATE of Florida, Appellee.
Mark Allen Davis, Petitioner,
v.
James V. Crosby, Jr., etc., Respondent.
Nos. SC02-1424, SC04-705.
Supreme Court of Florida.
October 20, 2005.
Rehearing Denied April 7, 2006.
*1102 Linda McDermott, Fort Lauderdale, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL and Candance M. Sabella, Assistant Attorney General, Chief of Capital Appeals, Tampa, FL, for Appellee/Respondent.
PER CURIAM.
Mark Allen Davis appeals an order of the circuit court denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Davis also petitions the Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const.

FACTUAL AND PROCEDURAL HISTORY
Davis was convicted of robbery, grand theft, and the first-degree murder of Orville Landis. See Davis v. State, 586 So.2d 1038, 1039 (Fla.1991), vacated, 505 U.S. 1216, 112 S.Ct. 3021, 120 L.Ed.2d 893 (1992). The jury, by a vote of eight to four, recommended the death penalty. See id. Following that recommendation, the trial judge sentenced Davis to life in prison on the robbery conviction, five years on the grand theft conviction, and death for the first-degree murder conviction. On direct appeal, we affirmed Davis's conviction for first-degree murder and death sentence. See id. at 1042. In affirming Davis's conviction and sentence, we detailed the facts surrounding the murder of Landis:
[Davis] came to St. Petersburg, Florida, during late June 1985, and immediately prior to the murder of Orville Landis apparently had been living in the parking lot of Gandy Efficiency Apartments. On July 1, 1985, Landis was moving into one of the apartments, and [Davis] offered to assist him. Subsequent to moving, the two men began drinking beer together, and [Davis] borrowed money from Landis. Witnesses testified that Landis had approximately $500 in cash that day. [Davis] told Kimberly Rieck, a resident of the apartment complex, that he planned to get Landis drunk and "see what he could get out of him." During approximately the same time, [Davis] told Beverly Castle, another resident, that he was going to "rip him [Landis] off and do him in." Shortly thereafter, Landis and [Davis] were seen arguing about money and they went to Landis' apartment.
Landis was last seen alive on July 1, 1985, at approximately 8:30 p.m. Castle testified that [Davis] appeared at her door at about midnight and told her that he had to leave town right away, and would not be seen for two or three years. Castle observed [Davis] driving *1103 away in Landis' car. During the afternoon of July 2, Castle became concerned and had Landis' apartment window opened, through which she observed him lying on his bed in a pool of blood.
When the police arrived they found Landis' wallet empty of all but a dollar bill. A fingerprint found on a beer can in the apartment was later identified as [Davis's]. The medical examiner testified that the victim sustained multiple stab wounds to the back, chest, and neck; multiple blows to the face; was choked or hit with sufficient force to break his hyoid bone; was intoxicated to a degree that impaired his ability to defend himself; and was alive and conscious when each injury was inflicted. The evidence showed that the slashes to the victim's throat were made with a small-bladed knife, which was broken during the attack, and the wounds to the chest and back were made with a large butcher knife, found at the crime scene.
[Davis] confessed to the police to the killing, as well as to the taking of Landis' money and car. He also told a fellow inmate that he killed Landis but expected to "get second degree," despite his confession, by claiming self-defense.
Id. at 1040.
At the penalty phase, the State presented one witness, Detective Craig Salmon, a police officer in Pekin, Illinois. Salmon provided testimony relating to Davis's prior offense of attempted armed robbery in Illinois in 1980, which was used in part to provide the basis for the prior violent felony aggravator. Davis was the only witness to testify at the penalty phase on his behalf. The jury voted eight to four in favor of the death penalty. See id.
In sentencing Davis to death, the trial judge found three aggravating circumstancesthat the murder was committed while Davis was under a sentence of imprisonment; that the murder was especially heinous, atrocious, or cruel ("HAC"); and that the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification ("CCP"). The trial court also found the following aggravators, but considered them collectively as constituting only one aggravating circumstance: that the murder was committed for pecuniary gain, that Davis had previously been convicted of another capital offense or felony involving the use of or threat of violence to some person,[1] and that the murder was committed while Davis was engaged in the commission of a robbery. The trial court found no mitigating circumstances.
On direct appeal, we affirmed Davis's murder conviction and death sentence. See Davis, 586 So.2d at 1042. In our opinion, we rejected Davis's claim that several comments made during trial by the State constituted impermissible comment. See id. at 1041. With regard to Davis's assertion that he was absent from the courtroom when jury challenges were exercised, we noted that this issue was remanded for a hearing to determine the applicable facts and that the trial judge's finding that Davis was in the courtroom at the relevant time was supported by competent substantial evidence, thereby rendering Davis's claim untenable. See id. Regarding Davis's other claims presented on direct appeal, we denied relief on all of them. See id. at 1040-41.
In June of 1992, the United States Supreme Court granted certiorari and vacated *1104 the judgment of this Court, remanding the case for further consideration in light of the High Court's opinion in Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). See Davis v. Florida, 505 U.S. 1216, 112 S.Ct. 3021, 120 L.Ed.2d 893 (1992). On remand, we reaffirmed Davis's death sentence, determining that the Espinosa issue was procedurally barred because vagueness of the instruction was not presented to the trial judge and that had the issue been presented, any error would have been harmless beyond a reasonable doubt. See Davis v. State, 620 So.2d 152 (Fla.1993). In February of 1994, certiorari was denied by the United States Supreme Court. See Davis v. Florida, 510 U.S. 1170, 114 S.Ct. 1205, 127 L.Ed.2d 552 (1994).

MOTION FOR POSTCONVICTION RELIEF
On May 4, 2000, Davis filed an amended rule 3.850 motion. On June 28, 2000, the trial court held a Huff[2] hearing to determine whether an evidentiary hearing on any of Davis's claims was warranted. On October 4, 2001, the trial court issued an order reflecting its determination that an evidentiary hearing was required to address eight of Davis's claims.[3] The trial court determined that Davis was not entitled to an evidentiary hearing on his remaining thirty-three claims. Subsequent to the evidentiary hearing, the trial court denied all of Davis's claims for postconviction relief, concluding that Davis had either failed to prove his claims or that there was insufficient evidence to support the claims and, therefore, the claims were meritless. This appeal followed.

I. Ineffective Assistance of Counsel at the Penalty Phase
Davis claims that his trial counsel, John Thor White (hereinafter "White"), provided ineffective assistance during the penalty phase. Following the United States Supreme Court's decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we have previously held that
[a] claim of ineffective assistance of counsel, to be considered meritorious, must include two general components. First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence *1105 in the outcome is undermined. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Downs v. State, 453 So.2d 1102 (Fla. 1984). A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986). The alleged ineffective assistance of counsel claim is a mixed question of law and fact, subject to plenary review based on Strickland. See Stephens v. State, 748 So.2d 1028, 1032 (Fla.1999). Under this standard, we conduct an independent review of the trial court's legal conclusions, while giving deference to the factual findings. See id. at 1032-33.
There is a strong presumption that trial counsel's performance was not ineffective. See Strickland, 466 U.S. at 690, 104 S.Ct. 2052. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. See id. at 689, 104 S.Ct. 2052. The defendant carries the burden to "overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). "Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689, 104 S.Ct. 2052.

A. Davis's Background and Upbringing
Davis contends that his trial counsel was ineffective at his penalty phase because his trial counsel only began preparing for the penalty phase after the jury found Davis guilty, trial counsel's billing records indicated that he spent less than eleven hours preparing for the penalty phase, the only investigation conducted by trial counsel was an interview of Davis and Davis's mother the day before the penalty phase, and trial counsel admitted that he never contemplated calling anyone other than Davis's mother to testify at the penalty phase. As to the timing and amount of trial counsel's preparation for Davis's penalty phase, we have held that "the finding as to whether counsel was adequately prepared does not revolve solely around the amount of time counsel spends on the case or the number of days which he or she spends preparing for mitigation. Instead, this must be a case-by-case analysis." State v. Lewis, 838 So.2d 1102, 1113 n. 9 (Fla.2002). Accordingly, a comparison of the evidence presented at the penalty phase with the evidence presented at Davis's postconviction evidentiary hearing is essential in assessing counsel's performance.
At the penalty phase, trial counsel only presented the testimony of Davis. Trial counsel testified at the evidentiary hearing that it was his strategy to present Davis's mother to testify with regard to the circumstances surrounding his upbringing. However, Davis's mother never testified due to Davis's last-minute decision that she not be called as a witness to avoid forcing her through the trauma of trial testimony.[4] Faced with this last-minute decision, trial counsel suggested an alternative approach, with the full agreement of Davis, whereby he would take the stand at the penalty phase in lieu of his mother. During Davis's testimony, trial counsel elicited only a very general description of *1106 his family background and upbringing. Davis also testified that he "wished to hell [the crime] had never happened" and that he had made the conscious decision not to call his mother to testify at the penalty phase to spare her the pain of that experience. Trial counsel used this testimony to Davis's advantage by arguing to the jury in closing that "Davis had the guts and decency not to put [his mother] up there in the box" and that his decision not to call his mother "was a profound gesture on his part and one worthy of consideration."
When trial counsel was asked at the evidentiary hearing why a more complete history had not been elicited from Davis during his testimony he responded that Davis told him he "did not want mitigating evidence presented" and said, "I want the electric chair. I want to stay alive ten or eleven years on death row. That's good enough for me." Faced with these statements from Davis and Davis's decision not to have his mother testify at the penalty phase, trial counsel reasonably determined that his best alternative was to have Davis testify in an effort to place before the jury Davis's decision to spare his mother the trauma of being forced to testify. Given the last-minute circumstances and the predicament that trial counsel faced as a result of Davis's decision and instruction that his mother not testify, we conclude that trial counsel's actions were not unreasonable, and that counsel was not deficient for selecting an alternative and making the best strategic decision available under a most difficult situation that had been created by Davis himself.
Davis also alleges that trial counsel's inadequate investigation resulted in his failure to discover a wealth of available mitigating evidence and that the mitigation of which trial counsel was aware was never presented at the penalty phase. Davis now alleges that by interviewing his family members and friends, trial counsel would have learned that each person had different details to convey that would have provided mitigating information. Specifically, Davis asserts that evidence of his tragic upbringing and substance abuse should have been presented.
Pursuant to Strickland, trial counsel has an obligation to conduct a reasonable investigation into mitigation. See Strickland, 466 U.S. at 691, 104 S.Ct. 2052. When evaluating claims that counsel was ineffective for failing to investigate or present mitigating evidence, this Court has phrased the defendant's burden as showing that counsel's ineffectiveness "deprived the defendant of a reliable penalty phase proceeding." Asay v. State, 769 So.2d 974, 985 (Fla.2000) (quoting Rutherford v. State, 727 So.2d 216, 223 (Fla.1998)). Moreover, as the United States Supreme Court recently stated in Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003):
[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.... [A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

. . . .
. . . [O]ur principal concern in deciding whether [counsel] exercised "reasonable professional judgmen[t]" is not whether counsel should have presented a mitigation case. Rather, we focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence . . . was itself reasonable. In assessing counsel's investigation, we must conduct an objective review of their performance, measured for "reasonableness under prevailing *1107 professional norms," which includes a context-dependent consideration of the challenged conduct as seen "from counsel's perspective at the time."
Id. at 521-23, 123 S.Ct. 2527 (citations omitted) (fifth alteration in original) (first emphasis supplied) (quoting Strickland, 466 U.S. at 688-89, 691, 104 S.Ct. 2052).
Davis's trial counsel testified at the evidentiary hearing that he was aware of Davis's difficult upbringing and the circumstances surrounding his family life and that it was his strategy at the penalty phase to call Davis's mother to testify regarding those facts. We find it significant that Davis's trial counsel had the full benefit of information obtained by the public defender's office, which included matters pertaining to Davis's background and upbringing. Specifically, trial counsel testified at the evidentiary hearing that the file he received from the public defender's office in Davis's case already contained records regarding his medical history, educational background, and other general background information surrounding his life. Moreover, trial counsel testified that he interviewed Davis and Davis's mother to gain an understanding of his life. Based on the information in the public defender's file that was reviewed and considered by trial counsel coupled with the additional information garnered by trial counsel through interviews of Davis's mother and Davis, we conclude that the investigation into Davis's background for mitigating evidence that was conducted here was neither inadequate nor unreasonable.
The United States Supreme Court's decision in Rompilla v. Beard, 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005), its most recent discussion of this issue, does not require a different conclusion. In Rompilla, the High Court concluded that defense counsel's conduct in preparation for the sentencing phase fell below the level of reasonable performance that is required by Wiggins and Strickland where defense counsel failed to review the court file on Rompilla's prior conviction. See id. at 2463-64. The Court stressed that it was not creating a per se rule requiring defense counsel to "do a complete review of the file on any prior conviction." Id. at 2467. Rather, the Court noted that the facts before it demonstrated that
[c]ounsel knew that the Commonwealth intended to seek the death penalty by proving Rompilla had a significant history of felony convictions indicating the use or threat of violence, an aggravator under state law. Counsel further knew that the Commonwealth would attempt to establish this history by proving Rompilla's prior conviction for rape and assault, and would emphasize his violent character by introducing a transcript of the rape victim's testimony given in that earlier trial. There is no question that defense counsel were on notice, since they acknowledge that a "plea letter," written by one of them four days prior to trial, mentioned the prosecutor's plans. It is also undisputed that the prior conviction file was a public document, readily available for the asking at the very courthouse where Rompilla was to be tried.
Id. at 2464 (citations omitted). In concluding that trial counsel's performance was deficient, the Court noted that "counsel did not look at any part of that file, including the transcript, until warned by the prosecution a second time," the day before the evidentiary sentencing phase began. Id. Although the facts of Rompilla led the Court to the conclusion that defense counsel's performance was unreasonable, the Court held that "[o]ther situations, where a defense lawyer is not charged with knowledge that the prosecutor intends to *1108 use a prior conviction in this way, might well warrant a different assessment." Id. at 2467.
The facts of the instant matter are entirely distinguishable from those present in Rompilla. As noted above, defense counsel in the present case reviewed all of the materials that were in his possession in preparation for Davis's penalty phase trial. Moreover, unlike Rompilla, there is no indication that there was material here that trial counsel was aware the State was going to use in aggravation that was not obtained and reviewed by trial counsel prior to the penalty phase trial. Moreover, unlike defense counsel in Rompilla, Davis's trial counsel reviewed records in the public defender's file transmitted to him regarding Davis's medical history, educational background, and other general background information surrounding his life. A thorough reading of the United States Supreme Court's decision in Rompilla reveals that it is inapplicable to the facts of the instant matter. Unlike defense counsel's deficient performance in Rompilla, trial counsel's investigation in the instant matter was within the level of reasonable performance that is required by Strickland and Wiggins. See Rompilla, 125 S.Ct. at 2463 ("[T]he duty to investigate does not force defense lawyers to scour the globe on the off-chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste.") (citing Wiggins, 539 U.S. at 525, 123 S.Ct. 2527; Strickland, 466 U.S. at 699, 104 S.Ct. 2052).
Moreover, a review of the mitigating evidence presented at the evidentiary hearing in this posttrial review demonstrates that the matters now asserted were either cumulative to that which trial counsel anticipated presenting through Davis's mother or exposed negative information pertaining to Davis's prior criminal conduct and drug abusetopics trial counsel made a reasonable strategic decision to avoid.[5] Trial counsel was fully aware of the pertinent information these witnesses possessed and any testimony that could have been elicited from these witnesses at the penalty phase would have been cumulative to the anticipated testimony of Davis's mother. Therefore, at the time of trial, once counsel secured Davis's mother to testify with regard to all of the pertinent information, his decision to forego further pursuit of other members of Davis's family and friends was not an unreasonable decision or approach. See Ventura v. State, 794 So.2d 553, 570 (Fla.2001) (finding that penalty phase counsel was not deficient for failing to procure the testimony of witnesses for the penalty phase whose testimony would have mirrored the *1109 testimony that was offered at that proceeding); Downs v. State, 740 So.2d 506, 516 (Fla.1999) (affirming the trial court's denial of the defendant's claims that counsel was ineffective for failing to investigate and present additional mitigating evidence where the additional evidence was cumulative to that presented during sentencing); Rutherford v. State, 727 So.2d 216, 224-25 (Fla.1998) (same); Valle v. State, 705 So.2d 1331, 1334-35 (Fla.1997) (same).
Trial counsel testified at the evidentiary hearing that it was also his strategy to avoid presenting potentially mitigating evidence that carried negative factors that would cast Davis in a negative light before the jury. Specifically, trial counsel agreed that he would not have wanted to use "information about [Davis] being troubled, becom[ing] a drug addict." Trial counsel was well aware of Davis's alcohol and substance abuse problems, as he testified with regard to his review of Davis's mental health report, which contained such information. Therefore, the substance of the testimony offered at the evidentiary hearing regarding this subject was known to trial counsel at the time of the penalty phase. Davis's trial counsel was not ineffective in exercising his decision to discontinue further investigation into matters that were already known to him and that he had strategically determined should not be presented to the jury. See Wiggins, 539 U.S. at 521-22, 123 S.Ct. 2527 ("[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.") (quoting Strickland, 466 U.S. at 691, 104 S.Ct. 2052); see also Ruffin v. State, 420 So.2d 591, 593 (Fla.1982) (concluding that the Court should not use hindsight to second-guess counsel's strategy).
Additionally, facts presented through the testimony of Davis's family members and friends at the evidentiary hearing regarding his family's poor economic situation and his father's abusive behavior and alcoholism were known to trial counsel through Davis and Davis's mother, and were therefore cumulative to that which trial counsel anticipated presenting through Davis's mother's testimony. In fact, several witnesses presented by Davis at the evidentiary hearing testified and recognized that Davis's mother would have been totally aware of the substance of their testimony and that she probably would have been even more familiar with all of those facts than the witnesses themselves. Given that trial counsel was aware of this information, we cannot conclude that trial counsel's investigation fell below the objective standard of reasonableness by which attorney performance is measured. See Wiggins, 539 U.S. at 521, 123 S.Ct. 2527. We conclude that counsel was not deficient in making the decision not to interview these witnesses when the information they testified to at the evidentiary hearing was already known to trial counsel at the time of the penalty phase. See Strickland, 466 U.S. at 691, 104 S.Ct. 2052. Moreover, with regard to the testimony of Davis's older brother Michael, we agree with the trial court's observation that this "witness grew up in the same household under the same circumstances as the defendant. And yet, he overcame this and established a stable life. The jury would have contrasted this with the defendant's lack of effort to overcome his circumstances." Davis has failed to establish how his trial counsel's performance was deficient in relation to the above witnesses.
Postconviction counsel's presentation of Tracy Davis ("Tracy"), Davis's second-oldest brother, merits special attention. Tracy testified at the evidentiary hearing with *1110 regard to the financial circumstances of his family, his father's alcoholism, and his father's abusive behavior, physically and mentally, towards his family. Additionally, Tracy testified that Davis was developing a drug habit and that he felt responsible for getting Davis involved with drugs and into trouble with the law. Tracy also admitted to having anally raped Davis when Davis was approximately six years old.
The trial court determined that Tracy would not have been available to testify at Davis's penalty phase. Our review of that determination on this record reveals that Tracy's testimony regarding his availability was unclear at best. On cross-examination, Tracy stated that he was not sure if his family knew how to contact him during Davis's trial because he was on the run from a parole violation. However, Tracy stated that he would have come to Florida to testify even though he would have faced the possibility of being arrested and extradited back to Illinois. We conclude that the trial court's finding that Tracy was unavailable to testify at the time of Davis's penalty phase is adequately supported by competent evidence in the record.
Moreover, even if we were to conclude that Tracy was available to testify at the penalty phase, the record demonstrates that White was not deficient for failing to secure his testimony. Similar to other members of Davis's family, the majority of Tracy's testimony regarding Davis's home life and his father's substance abuse and abusive behavior was already known to White through Davis and his mother. White anticipated calling Davis's mother to testify to these facts at the penalty phase. We conclude that trial counsel's performance was not deficient for failing to secure this additional witness to provide testimony that would have been cumulative to that which he anticipated eliciting from Davis's mother. As to Tracy's testimony regarding Davis's substance abuse and criminal activity, Davis has failed to show that his attorney would have presented that testimony at the penalty phase given his strategic decision to avoid revealing such negative information to the jury.
With regard to Tracy's testimony that he anally raped Davis when Davis was six, the trial court accurately noted that this testimony was "suspect at best." Moreover, Davis never mentioned this information at any time to his trial counsel or his mental health expert, and no other member of the family seemed to know anything about this subject. In fact, Davis specifically denied having ever been sexually molested as a child or in prison when asked by his mental health expert. We cannot conclude that trial counsel was deficient for failing to pursue such mitigation when Davis himself failed to inform either counsel or mental health experts about this matter. See Stewart v. State, 801 So.2d 59, 67 (Fla.2001) (holding that the defendant's failure to communicate instances of childhood abuse to defense counsel or defense psychiatrist precludes claim that counsel was deficient for failing to pursue such mitigation). In summary, we hold that trial counsel was not deficient for failing to secure Tracy's testimony, considering that the information regarding Davis's upbringing was known to his mother, that Davis has not shown that Tracy was available to testify at the time of his penalty phase, that trial counsel's strategy was to avoid presenting negative information regarding Davis, and that Davis in fact denied prior sexual abuse.
Moreover, even if we were to assume that trial counsel was ineffective in performance and investigation, Davis has *1111 totally failed to establish the required element that his trial counsel's performance prejudiced him. In its sentencing order, the trial court found four aggravating factors and no mitigating circumstances. Given the facts of the crime and the overwhelming aggravating factors that were found to exist, along with the absence of mitigating circumstances, our confidence in the outcome of the proceedings below has not been undermined as Davis has totally failed to establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. 2052; see also Hodges v. State, 885 So.2d 338, 350-51 (Fla.2004) (affirming death sentence even in light of postconviction evidence regarding defendant's impoverished and abusive upbringing where trial court found two aggravators, that the murder was committed to disrupt or hinder law enforcement and CCP); Asay v. State, 769 So.2d 974, 988 (Fla.2000) (holding that there was no reasonable probability that evidence of the defendant's abusive childhood and history of substance abuse would have led to a recommendation of life where the State established three aggravators: the murder was committed by a person under sentence of imprisonment; defendant had been previously convicted of a capital felony; and CCP); Breedlove v. State, 692 So.2d 874, 878 (Fla.1997) (holding that the aggravating circumstances of prior violent felony, murder committed during the course of a burglary, and HAC overwhelmed the mitigation testimony presented concerning childhood beatings and alcohol abuse).

B. Mental Health Mitigation
Davis claims that his trial counsel was deficient for failing to adequately investigate and prepare mental health mitigation as well as for failing to present mental health mitigation that was available. Prior to trial, Davis's trial counsel engaged Dr. David C. Diffendale to perform a mental health evaluation of Davis and to prepare a report summarizing his findings regarding both Davis's competency to stand trial and other issues relevant to sentencing. At the evidentiary hearing, trial counsel testified that in his opinion the report would not have been helpful in establishing an intoxication defense or in negating specific intent. Additionally, trial counsel testified that the report contained information describing Davis's violent nature and concluding that he had a pattern of excessive violence. Trial counsel summed up his reasons for not presenting the report when he testified that after evaluating the report he
didn't think that Dr. Diffendale's report was favorable to the defendant. . . . I mean he found that my fellow client didn't suffer any psychosis, any major mental problems, you know. He gave a very negative history . . . that would put my client in a very negative light, in my judgment. . . . I felt that Dr. Diffendale was useless, as a witness. He was more negative than positive.
The language contained within the report supports trial counsel's decision not to present the report. The report, in pertinent part, notes Davis's
explosive, impulsive anger. He has a history of over-responding with violent anger when sexually approached by males in jail. When asked, he reported continuing to beat others who had approached him long after they had ceased struggling. He reports "loosing (sic) it" when he feels threatened. This mode of behavior may explain the excessive stab wounds.
In the sentencing recommendation portion, the report states that

*1112 [a]id for sentencing is difficult in this evaluation. His response to the situation leading to the victim's death is understandable given the defendant's family history, jail experiences, psychological make-up and intoxication. These circumstances might lead to recommending a lesser sentence. Further jail will more likely reinforce the behaviors that lead [sic] to the current crime. However, he has been involved with breaking the law for ten of his twenty three years. Thus, his sentence should be stiffer. In this section I usually recommend some realistic form of rehabilitation. I do not find any such available for this case within the constraints of the criminal justice system.

(Emphasis supplied.) Although the report does contain some potentially mitigating evidence regarding Davis's troubled upbringing and his father's abusive behavior, we determine that trial counsel's strategy of not presenting the report to the jury was reasonable given the highly negative information that was also contained in the report. Therefore, we hold that Davis's trial counsel was not deficient for failing to present Dr. Diffendale's report to the jury and that Davis's claim was properly denied. See Hodges, 885 So.2d at 348 ("In light of evidence demonstrating that counsel pursued mental health mitigation and received unusable or unfavorable reports, the decision not to present the experts' findings does not constitute ineffective assistance of counsel.").[6]

C. Other Mitigation
Davis asserts that his trial counsel was deficient for failing to present mitigating evidence concerning his good behavior during his previous incarceration to rebut the State's cross-examination of him concerning his involvement in escape attempts. The record reflects that trial counsel elicited testimony from Davis at the penalty phase that he had the will to live under the circumstances of confinement without being disruptive if he were given a life sentence. Based on our review of the record, it is apparent that trial counsel did in fact attempt to establish Davis's ability to live in confinement by establishing that he had been able to do so in the past without a problem and was willing to do so in the future. We conclude that Davis's claim is not supported by the record.
Next, Davis asserts that his trial counsel failed to present evidence to negate the existence of the "cold, calculated and premeditated" state of mind or evidence of justification. Davis fails to specify what evidence trial counsel should have presented other than that related to his alleged intoxication on the night of the offense, which would have undermined his ability to form the intent necessary to establish CCP. Contrary to Davis's assertion, however, his trial counsel did present evidence of Davis's intoxication on the night of the crime through cross-examination of State witnesses Kimberly Rieck and Beverly Castle. As this evidence was placed before the jury by Davis's trial counsel, this claim is without merit.
Even if we were to conclude that White's penalty phase performance, in its totality, was deficient, which we do not, Davis has failed to demonstrate that he was prejudiced by that performance. Given the significant aggravating circumstances and the complete lack of mitigation, *1113 White's performance did not so affect the fairness and reliability of the proceeding that confidence in the outcome is undermined. See Maxwell, 490 So.2d at 932 (citing Strickland, 466 U.S. at 668, 104 S.Ct. 2052).

II. Brady and Giglio Claims
Davis asserts that his due process rights were violated as a result of the State withholding material exculpatory evidence or presenting false evidence at trial or both. The State is required to disclose material information within its possession or control that tends to negate the guilt of the defendant. See Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Guzman v. State, 868 So.2d 498, 508 (Fla.2003). Errors involving the suppression of evidence in violation of Brady present issues of constitutional magnitude. See Cardona v. State, 826 So.2d 968, 973 (Fla.2002). As expressed in Brady, the rule is premised on the principle that reversal is warranted when the State fails to disclose to the defense exculpatory or impeaching evidence that prejudices the defendant, thereby undermining confidence that he received a fair trial. See Cardona, 826 So.2d at 972-73 (quoting Brady, 373 U.S. at 87-88, 83 S.Ct. 1194).
To establish a Brady violation, a defendant must demonstrate: "(1) the State possessed evidence favorable to the accused because it was either exculpatory or impeaching; (2) the State willfully or inadvertently suppressed the evidence; and (3) the defendant was prejudiced." Allen v. State, 854 So.2d 1255, 1259 (Fla. 2003) (citing Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)); see also Banks v. Dretke, 540 U.S. 668, 690-91, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004). Prejudice is established when a defendant demonstrates that the suppressed evidence was material. See Allen, 854 So.2d at 1260. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Strickler, 527 U.S. at 280, 119 S.Ct. 1936 (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). The United States Supreme Court has defined "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see also Bagley, 473 U.S. at 682, 105 S.Ct. 3375 (expressly applying the Strickland formulation of "reasonable probability" to Brady cases). The determination of whether a Brady violation has occurred is subject to independent appellate review. See Cardona, 826 So.2d at 973. Each of Davis's alleged Brady violations must therefore be addressed.
Davis asserts that the State admitted to "Millerizing" police reports that were provided to his trial counsel in discovery. The term "Millerizing" refers to the practice employed by the State Attorney's office at the time of Davis's trial whereby non-verbatim statements of witnesses contained within police reports were excised from those reports prior to providing them to defense counsel. However, other than statements made by the State Attorney that the State was "Millerizing" police reports at the time of Davis's trial, and testimony by Davis's trial counsel that he "believed" he received the "Millerized" reports, we find no additional support in the record for Davis's assertion. The actual police reports that Davis's trial counsel received were not introduced into evidence and, therefore, we are unable to compare the reports that postconviction counsel received from the State with the reports obtained by trial counsel during discovery. However, for the reasons that follow, even if we were to assume that *1114 Davis's trial counsel did in fact receive the "Millerized" versions of the police reports, Davis's claim still fails.
Davis alleges that witnesses' statements contained in Detective O'Brien's police report were excised from the report provided to his trial counsel. Specifically, Davis asserts that statements made by Kimberly Rieck, Jean Born, and Glenda South were excised. However, the statements allegedly suppressed by the State were in fact available to Davis's trial counsel in pretrial deposition testimony. A review of Detective O'Brien's deposition reveals that his deposition testimony was almost a word-for-word recitation of that which was contained on the face of his written report including the non-verbatim witnesses' statements. As the detective's deposition was available to Davis's trial counsel, it is clear that there is no support for Davis's Brady claim. See Occhicone v. State, 768 So.2d 1037, 1042 (Fla.2000) ("[A] Brady claim cannot stand if a defendant knew of the evidence allegedly withheld or had possession of it, simply because the evidence cannot then be found to have been withheld from the defendant.").
Next, Davis alleges that much of Detective Rhodes' report, which contained statements from many of the same witnesses, was withheld from his trial counsel. Specifically, Davis refers to statements contained within the report made by Glenda South that in her opinion Davis was an "unstable type person," one that was "nuts." This statement is hardly exculpatory and could not have been impeaching as Glenda South was never called as a witness by the State. Davis also refers to portions of the report summarizing statements of George Lee, who encountered Davis in a bar on the evening of the murder. Davis points to summarized statements of Lee that he observed Davis buying "quite a few drinks." Again, this information does not appear exculpatory in nature and we note that Davis's trial counsel possessed information that Davis had been drinking on the night of the incident.
Even if the State had failed to disclose all of the above information, Davis has not established that the absence of this information undermines confidence in the outcome of the proceeding. Notably, Davis's trial counsel testified that he did not want to use these witnesses at trial because it would have caused him to lose the opportunity to present both the first and last closing argument. Moreover, counsel was of the view that he had established evidence of Davis's intoxication through his cross-examination of the State's witnesses, a statement that is clearly supported by our review of the trial transcript. Davis has failed to establish that the State committed a Brady violation in relation to the alleged "Millerization" of police reports. We therefore hold that the trial court properly denied this claim.
Next, Davis asserts that the State failed to disclose statements of numerous witnesses contained in a synopsis written by the State Attorney's Office. Specifically, Davis alleges that the synopsis contained statements of witness Beverly Castle that were inconsistent with her trial testimony and which could have been used for impeachment purposes. However, a review of the trial transcript reveals that Davis's trial counsel did in fact impeach this witness on the stand with pretrial statements similar to those allegedly suppressed by the State. Moreover, Davis's trial counsel had the transcript of an oral interview conducted by the police with Castle that contained information almost identical to that contained in the allegedly suppressed synopsis by the State Attorney's Office. Davis's trial attorney knew the substance of the allegedly suppressed statements and in fact used those statements *1115 to impeach the witness at trial. Davis has failed to establish a Brady violation in relation to this witness's pretrial statements.
Next, Davis makes a sweeping allegation that the State suppressed statements from several witnesses regarding Davis's level of intoxication. Even assuming that these statements were suppressed by the State and that the information was exculpatory or impeaching, Davis has failed to establish that he was prejudiced. We agree with trial counsel that he accomplished his goal of placing evidence of intoxication before the jury during his detailed cross-examination of the State's witnesses. Additionally, trial counsel stated that once he had placed this evidence before the jury, he had no desire to call any other witnesses with information regarding Davis's intoxication because he did not want to relinquish the ability to present the first and last closing arguments. Given this strategy, we conclude that even if the statements to which Davis refers were not disclosed to his defense team, these witnesses would not have been presented to the jury. Therefore, our confidence in the outcome of the proceeding is not undermined. Davis's claim was appropriately denied.
Davis next asserts that the State suppressed information regarding a deal that it made with Shannon Stevens in exchange for Stevens testifying against Davis at the trial, resulting in a Brady violation. Davis also alleges that Stevens' testimony at trial that he was not receiving any benefit or leniency was false, that the State knew his testimony was false, and, by failing to correct this testimony, the State violated Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).[7] In support of his allegation, Davis points to Stevens' testimony at the evidentiary hearing where, in response to a question as to what the State Attorney had told him regarding reinstatement of his gain time, Stevens stated: "I believe I was told they would see what they could do." (Emphasis supplied.) Additionally, collateral counsel introduced into evidence at the evidentiary hearing a letter written by the State on behalf of Stevens wherein the State noted that "[i]n light of [Stevens'] cooperation [in Davis's case], I told Mr. Stevens our Office would request the Department of Corrections to retain, if at all possible, any gain time he has accrued. We would appreciate any consideration you can give in this matter."
Our review of the record on appeal, and specifically Stevens' testimony at the postconviction evidentiary hearing, supports the trial court's denial of this claim. Although the State did send a letter to Stevens' sentencing judge, Stevens himself testified that there were no deals or promises made. While it may be true that Stevens had the hope that the State would assist him in his effort to secure his gain time, there is no evidence that a deal was in fact made or a promise conclusively extended. Davis points to no support in the record that there was an agreement between Stevens and the State other than the testimony of Stevens that the State told him that they would "see what they could do." This testimony alone does not *1116 establish that there was an agreement made between Stevens and the State. Based on our review of the record, we conclude that Davis has failed to establish that there was in fact a deal between the State and Stevens in exchange for his testimony. Accordingly, both Davis's Brady and his Giglio claim were properly denied.
Finally, Davis asserts that the State committed a Brady violation by suppressing from his trial counsel the identity of Gary Dolan, a fellow inmate with whom Davis purportedly planned an escape. Dolan testified at the postconviction evidentiary hearing that he was involved in negotiations with the State to assist in several cases, one of which was Davis's. As a result of these negotiations, Davis contends that the State learned of the purported planned escapes and used that information in cross-examining Davis during the penalty phase. This claim is procedurally barred. The issue was completely developed on the appellate record and was therefore available to be reviewed on direct appeal but was simply not presented. See Rose v. State, 675 So.2d 567, 569 n. 1 (Fla.1996).
Procedural bar notwithstanding, Davis has failed to establish that the State suppressed exculpatory or impeaching evidence. The State Attorney emphatically denied ever making any promises to Dolan in exchange for information on Davis's case. The trial court below found Dolan's testimony not to be credible and concluded that Dolan "had no contact with the defendant's case, had no information to offer the defendant, and the State had no reason to list him as a potential witness or disclose him to the defendant as someone having any relevant information." Moreover, Davis certainly knew what he had discussed with Dolan and was therefore aware of any information that Dolan may have received to reveal to the State. Based on the foregoing we conclude that this claim was properly denied. See Occhicone, 768 So.2d at 1042.

III. Ineffective Assistance of Counsel at the Guilt Phase
Davis alleges that his trial counsel was ineffective in failing to file a motion to suppress Davis's statements and motions in limine regarding photos and victim impact information. However, the testimony at the evidentiary hearing does not support Davis's allegation. White testified that he did not identify any issues worthy of motion practice. White further testified that he did not file a motion in limine regarding photos of the victim's body because, based on his experience as a criminal lawyer, the photos were necessary as demonstrative aids to assist Dr. Joan Wood in describing her testimony and, therefore, there were no legal grounds to exclude the photos. With regard to the victim impact information, White testified that he did not recall whether he made an objection when one of the victim's relatives made a statement to the court, but he did object when the State identified to the jury one of the victim's family members who was in the audience at the sentencing.
Counsel's strategic decisions do not demonstrate ineffective assistance. See Strickland, 466 U.S. at 687, 104 S.Ct. 2052. White's testimony reveals that his decision not to file pretrial motions as Davis now challenges was based on his assessment at the time that the motions would not have been meritorious. Moreover, Davis does not allege how he was prejudiced by the alleged error. As adequately stated by the trial court, the testimony of defense counsel at the postconviction evidentiary hearing does not support Davis's claim, and thus we affirm the trial court's denial of this claim.
*1117 Next, Davis contends that his trial counsel failed to depose or obtain statements from key witnesses listed by the State who had information favorable to Davis's defense. Specifically, Davis asserts that his trial counsel should have interviewed four individuals who saw Davis and the victim at a bar on the day of the crime. White testified at the evidentiary hearing that he had the depositions of the key witnesses who had been deposed by the public defender's office as well as the police reports containing information provided by people who were at a local bar in the general vicinity of the crime scene. Trial counsel further testified that based on these depositions, the police reports, and his defense strategy, he decided it was not necessary to take additional depositions of the people at the bar.
This Court has held that when a failure to depose is alleged as part of an ineffective assistance of counsel claim, the appellant must specifically set forth the harm from the alleged omission, identifying "a specific evidentiary matter to which the failure to depose witnesses would relate." Brown v. State, 846 So.2d 1114, 1124 (Fla.2003) (quoting Magill v. State, 457 So.2d 1367, 1370 (Fla.1984)). Davis has not established that any of the individuals he claims White should have deposed had information that was unknown to White before trial. Moreover, there is nothing in the record demonstrating what evidence would have been elicited from these witnesses or what material might have been discovered had trial counsel deposed them. Davis has failed to show prejudice resulting from trial counsel's decision not to depose these individuals, and thus this claim is without merit.
Davis next asserts that trial counsel was ineffective in failing to request funds for an investigator. Trial counsel is not absolutely required to hire an investigator under all circumstances. Trial counsel is only required to conduct a reasonable investigation. See Freeman v. State, 858 So.2d 319, 325 (Fla.2003). White testified that he did not use an investigator in Davis's case because "the facts were pretty well developed and undisputed." He also testified that he had the public defender's file, which contained background information and documents on Davis that had been gathered by the public defender's investigator. Thus, although White did not retain a second investigator, he had full investigatory support already completed before he entered the case. Davis has failed to demonstrate what information would have been revealed had trial counsel hired an investigator or that trial counsel's investigation was otherwise unreasonable. Therefore, Davis has failed to demonstrate prejudice. Based on the foregoing, this claim was properly denied.
Davis contends trial counsel was ineffective during voir dire in failing to question jurors about their views regarding drugs, alcohol abuse, and mental illness, as well as stipulating to the removal for cause of eleven potential jurors. The record indicates that the jurors were in fact not questioned during voir dire regarding drugs, alcohol abuse, or mental illness. However, even if we were to conclude that this failure rendered trial counsel's performance deficient, Davis has failed to demonstrate how this prejudiced these proceedings. Davis has not provided evidence that any unqualified juror served in this case, that any juror was biased or had an animus toward the mentally ill or persons suffering from drug addiction. Thus, this claim is without foundation.
In addition, Davis has not demonstrated that trial counsel did not have a reasonable basis to stipulate to the removal for cause of eleven potential jurors. He *1118 attempts to surmount this problem by merely asserting that if counsel had "followed up" during voir dire with more specific questions and had effectively rehabilitated the jurors, there would not have been a basis for any for-cause challenges. This is mere conjecture, and this Court has rejected a similar argument in Reaves v. State, 826 So.2d 932, 939 (Fla.2002). Moreover, trial counsel did object to the current state of the law regarding stipulated challenges for cause relating to those individual jurors who were completely against the death penalty, preserving his claim in case of future change in the law.
Davis also asserts that he was prejudiced because juror Cantlin stated that she knew the judge. The record indicates that the judge and juror Cantlin made known to both sides that he knew Cantlin though her husband. The record indicates that the prosecutor questioned Cantlin regarding whether her knowing the judge would affect her ability to sit as a juror, and she responded that it would not. Cantlin further confirmed that she would not have a problem serving as a juror in this case. Davis has not demonstrated any legal basis for removal or that Cantlin demonstrated any bias or that he was in fact prejudiced by Cantlin sitting on the jury. Thus, this claim is also without merit.
Davis also challenges counsel's decision to waive opening statements. At the postconviction evidentiary hearing, trial counsel testified that his general strategy is to argue that the State has not met its burden without presenting witnesses to avoid boxing his client into a particular course of action and that he implemented this strategy in Davis's case. Trial counsel testified that because he was not presenting evidence in Davis's case, he decided against presenting an opening statement. The record supports the conclusion that it was a strategic decision to waive opening statement, that the decision was reasonable under the circumstances, and that trial counsel considered and rejected reasonable alternative courses of action. Thus, we conclude that trial counsel's strategic decision did not amount to ineffective assistance. See Occhicone, 768 So.2d at 1048 ("[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct."). It is not necessary to address whether Davis has made a showing of prejudice because he has failed to establish the deficiency prong which is a prerequisite under Strickland. See Strickland, 466 U.S. at 697, 104 S.Ct. 2052 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").
Davis next claims that trial counsel was ineffective for failing to use evidence of Davis's intoxication at the time of the offense to argue a voluntary intoxication defense. Specifically, Davis asserts that voluntary intoxication could have been employed as a defense to Davis's first-degree murder charge and could have rebutted the necessary elements of specific intent and premeditation. At the time of these events, voluntary intoxication was a recognized defense to premeditated first-degree murder. See Occhicone, 768 So.2d at 1045; Gardner v. State, 480 So.2d 91, 92 (Fla.1985).
White testified at the evidentiary hearing that the issues relating to intoxication were significantly developed during the State's case and that the testimony of the witnesses he chose not to present, such as Carl Kearney and Glenda South, regarding Davis's intoxication was not any stronger or more convincing than the information *1119 provided by the State's witnesses during cross-examination. White also noted that calling additional witnesses would have resulted in losing his opportunity to present the first and last closing argument. Moreover, White stated that if he called a witness who had some favorable knowledge relating to the intoxication issue, that witness might also have provided damaging unfavorable information, including testimony with regard to statements made by Davis that the victim was a homosexual and that he was planning to take the victim's money. White testified that he considered all of these aspects in deciding not to present additional witnesses to testify regarding the intoxication issue. He stated that he had a predesigned goal and strategy to present certain information about Davis's intoxication to the jury and he completely met that goal through the State's witnessesBeverly Castle and Kimberly Rieck. White testified that based upon the facts with which he was faced, presenting an intoxication defense to preclude a first-degree murder conviction was not really a viable strategy; instead, he wanted intoxication to be in evidence to place it in context to achieve his overall goal and strategy of obtaining a second-degree murder conviction. White noted that there was much evidence tending to support premeditation and it was his desire to inject Davis's intoxication to suggest that Davis did not fully form a conscious intent to do that which ultimately occurred, but he did not use intoxication as the primary defense because he did not think the jury would accept and believe that defense in this case.
Ultimately, White testified that it was his strategy to allow the state witnesses to provide the background of Davis's intoxication sufficient to obtain an intoxication instruction and not present additional witnesses on the intoxication issue to avoid losing his ability to make first and last closing argument. We have deemed similar strategies reasonable in the past. See Occhicone v. State, 768 So.2d 1037 (Fla.2000) (affirming the trial court's finding of reasonableness where attorneys consciously chose not to present evidence based on the belief they had presented enough evidence through cross-examination and that it was more important to have the first and last closing argument); see also Reed v. State, 875 So.2d 415, 430 (Fla.) (concluding that trial counsel's decision to reserve first and last closing arguments and avoid the presentation of potentially perjurious testimony was not deficient performance), cert. denied, 543 U.S. 980, 125 S.Ct. 481, 160 L.Ed.2d 358 (2004). The fact that collateral counsel would have chosen a different strategy does not render trial counsel's decision in the instant case unreasonable in hindsight. See Cooper v. State, 856 So.2d 969, 976 (Fla.2003) ("The issue before us is not `what present counsel or this Court might now view as the best strategy, but rather whether the strategy was within the broad range of discretion afforded to counsel actually responsible for the defense.'") (quoting Occhicone, 768 So.2d at 1049).
Moreover, the record reflects that evidence of Davis's alleged intoxication was in fact presented to the jury through State witnesses Kimberly Rieck and Beverly Castle. Detective Rhodes also testified that Davis told him that on the date of the murder he had been drinking all day. Thus, Davis's claim on the intoxication issue is ultimately that the voluntary intoxication defense was not pursued as vigorously as it should have been because trial counsel failed to present additional witnesses who had knowledge of Davis's intoxication. However, the evidence of intoxication presented was in fact more than sufficient to support a jury instruction on *1120 voluntary intoxication and, if believed, provide a basis upon which the jury could respond. Therefore, this claim was properly denied. See Patton v. State, 878 So.2d 368, 373 (Fla.2004) (rejecting the defendant's claim that the voluntary intoxication defense was not pursued as vigorously as it should have been when the record indicated that defense counsel relied on the limited evidence of intoxication elicited from the State's witnesses, all of which was enough to support a jury instruction on voluntary intoxication).
Davis claims that trial counsel was ineffective because he failed to discover prior to trial the inconsistent statements of Beverly Castle and Kim Rieck, which precluded counsel from effectively cross-examining these witnesses. At the evidentiary hearing, White testified that he did cross-examine both Rieck and Castle regarding their conflicting statements on the degree of Davis's intoxication on the date of the crime. Contrary to Davis's assertion, the transcript of White's cross-examination of both Rieck and Castle reveals that counsel was indeed aware of their prior statements to the police and that he did in fact use them to impeach these witnesses at trial. Based on the foregoing, this claim is without merit.
Davis further claims that trial counsel failed to object to the inadequate jury instruction on voluntary intoxication. The instruction on voluntary intoxication was given and is contained in the record, and, therefore, as a substantive matter this claim could and should have been presented on direct appeal. Accordingly, this claim is procedurally barred in this proceeding. Procedural bar of the substantive claim notwithstanding, the ineffective assistance of counsel claim is meritless. Davis has not explained how and why the instruction was inadequate. As noted by the trial court, White cannot be held ineffective for not objecting to a proper instruction. Therefore, we conclude that the trial court properly denied relief with regard to this claim.
Davis contends that trial counsel was ineffective in attempting to present a self-defense or sexual advance defense. At trial, Detective Rhodes testified that Davis told him that he knocked on the victim's door on the night of the murder and told the victim he needed to borrow some money. At that point, Davis told the detective that the victim told Davis he would have to do something for it and the victim reached down and grabbed Davis's testicles. This Court has not previously recognized that a nonviolent homosexual advance may constitute sufficient provocation to incite an individual to lose his self-control and commit acts in the heat of passion, thus reducing murder to manslaughter. Therefore, Davis's claim with regard to the sexual advance theory is unpersuasive.
With regard to the self-defense theory, White testified at the evidentiary hearing that his strategy was not to seek an acquittal on the basis that the killing was committed in self-defense. Rather, the self-defense theory was part of an overall attempt to convince the jury to lessen any conviction down from first- to second-degree murder. In fact, trial counsel testified that he did not see evidence to believe a self-defense theory and it was his view the jury would also reject that approach. The fact that present counsel might or would have chosen a different strategy does not render trial counsel's decision unreasonable or ineffective. See Cooper v. State, 856 So.2d 969, 976 (Fla. 2003). Moreover, evidence of self-defense was actually presented before the jury. Detective Rhodes testified that Davis advised him that he and the victim began to fight and that it was the victim who first *1121 picked up a long butcher knife. It was Davis's statement that he obtained the knife as he disarmed the victim. As noted by the trial court, the crime scene video was shown to the jury and any evidence of a struggle would have been apparent to the jury from this crime scene video. Finally, White argued self-defense during closing and the jury was in fact given the self-defense instruction. Based on the foregoing, we conclude that counsel's performance was not deficient and that Davis has failed to establish prejudice.
Davis asserts that counsel was ineffective in forfeiting opportunities to negotiate with the State regarding whether the State would seek the death penalty in this case. At the evidentiary hearing, White testified that it was never communicated to him that the State had the authority to offer Davis a life sentence. Trial counsel stated that he did not believe that Davis ever asked him before trial to approach the State to seek a plea in exchange for a waiver of death. Davis has not presented any evidence demonstrating that the State in fact provided trial counsel an opportunity to engage in any negotiating. Therefore, Davis has failed to demonstrate that trial counsel was deficient in this respect. Accordingly, this claim should also be rejected.
With regard to Davis's cumulative error argument, the trial court properly found this claim to be without merit. "Where individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error must fail." Griffin v. State, 866 So.2d 1, 21 (Fla.2003); see also Downs v. State, 740 So.2d 506, 509 n. 5 (Fla.1999).

IV. Prosecutorial Comments
Davis asserts that the State improperly commented on his failure to testify in the guilt phase and that the State also attempted to inflame the jury by referring to him as a "biker." As properly noted by the trial court, this claim was presented and rejected by this Court on direct appeal, and therefore is procedurally barred. See Davis v. State, 586 So.2d 1038, 1041 n. 7 (Fla.1991).
Davis also alleges that the State made an improper Golden Rule argument. "A `golden rule' argument asks the jurors to place themselves in the victim's position, asks the jurors to imagine the victim's pain and terror or imagine how they would feel if the victim were a relative." Hutchinson v. State, 882 So.2d 943, 954 (Fla.2004). In this case, the prosecutor stated:
You heard the testimony of Dr. Wood. Dr. Wood could not give you any type of an estimate on the shortening of his life by the additional stab wounds but we know that the injury to the neck occurred first. What else did she tell you? That Mr. Landis would have been conscious for approximately five minutes prior to his death. Folks, I ask you to do something. If any of you have a second hand on your watch, go back to the jury room and sit in silence, total silence for two minutes, not five, just two, and I suggest to you it is going to seem like an eternity to sit there and look at one another for two minutes. Contemplate Orville Landis and the time he spent, not two minutes, but closer to five minutes with his throat cut, bleeding profusely, then with that man continuing the attack by repeatedly stabbing him in the chest with enough force to go through his body to the back five times breaking bones, with enough force in his back to have nine of the eleven stab wounds, again, through his breaking bones. And that two to five minutes to Orville Landis, I suggest to you, was like an eternity of pain, suffering and hell. That is cruel punishment, that is cruel treatment to the victim. That's what *1122 this [HAC] aggravating factor is all about. I suggest to you that we have met that burden.
This Court has deemed penalty phase arguments improper where they invited the jury to imagine the pain and suffering of the victim. See Garron v. State, 528 So.2d 353, 358-59 (Fla.1988) (concluding that the following statement by the prosecutor was improper: "imagine the pain this young girl was going through as she was laying there on the ground dying.... Imagine the anguish and the pain that Le Thi Garron felt as she was shot in the chest and drug [sic] herself from the bathroom to the bedroom where she expired"); Bertolotti v. State, 476 So.2d 130, 133 (Fla. 1985) (concluding that the prosecutor asking the jurors to place themselves in the position of the victim and imagine her pain was improper).
Here, trial counsel may have arguably been deficient in failing to object to the prosecutor's argument because it appears that the prosecutor's comments may have crossed the line separating proper argumentation from an improper appeal to the jurors' emotions. However, the prosecutor's comments, when read in context, indicate that the comment was made when the prosecutor was attempting to demonstrate to the jury that the murder was heinous, atrocious, or cruel, one of the "most serious aggravators set out in the statutory sentencing scheme." Larkins v. State, 739 So.2d 90, 95 (Fla.1999). Although a close question, we conclude that failing to object to the comments complained of clearly did not so affect the fairness and reliability of the proceeding that confidence in the outcome is undermined. No prejudice has been established and, therefore, this claim cannot be sustained.
Davis asserts that the prosecutor had no good-faith basis to argue that Davis was not intoxicated because the prosecutor knew that Davis was in fact intoxicated at the time of the offense. Davis further claims that the prosecutor improperly argued in its memorandum of law for sentencing that the substantial impairment mitigator was not present. This claim could and should have been presented on direct appeal and, thus, is procedurally barred in these proceedings. Contrary to Davis's assertion that this claim is not procedurally barred because it is based on witnesses' statements introduced at the evidentiary hearing that were not revealed until postconviction proceedings, it is clear from the evidence that all were aware of the intoxication facts at the time of trial. Therefore, we conclude that the trial court properly found this claim to be procedurally barred.

V. Ake Claim
Davis contends that he did not receive adequate mental health assistance as required by Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). First, to the extent that Davis is asserting a true Ake claim, and is not simply reasserting his ineffective assistance of counsel claim, it is procedurally barred because it could and should have been presented on direct appeal. See Marshall v. State, 854 So.2d 1235, 1248 (Fla.2003) (holding that appellant's claim that he was deprived of his right to an evaluation by a competent mental health expert pursuant to Ake was procedurally barred because it could have been presented on direct appeal); Moore v. State, 820 So.2d 199, 203 n. 4 (Fla.2002) (same); Cherry v. State, 781 So.2d 1040, 1047 (Fla.2000) (same).
Procedural bar not withstanding, Davis's Ake claim lacks merit. In Ake, the United States Supreme Court held that
when a defendant demonstrates to the trial judge that his sanity at the time of *1123 the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.
Ake, 470 U.S. at 83, 105 S.Ct. 1087. Davis does not contend that he was denied access to a mental health professional. Rather, Davis asserts that Dr. Diffendale did not provide competent mental health assistance because he did not perform an adequate evaluation and his investigation into Davis's background in support of his report was inadequate. Davis contends that historical data gathered for use in a mental health evaluation must be obtained not only from the patient but also from independent sources. In denying this claim, the trial court found:
A review of the report reveals that Dr. Diffendale was familiar with the defendant's social history and his medical history. In addition, the report reflects that the Dr. had contact with the defendant's mother and obtained information about the defendant from her. Trial counsel testified that Dr. Diffendale knew about the defendant's upbringing. Moreover, the State's expert witness who testified at the evidentiary hearing, Dr. Sidney Merin, testified that he reviewed Dr. Diffendale's report. Dr. Merin testified that the background information contained in Dr. Diffendale's report was consistent with the background information provided by the defendant to Dr. Merin during his consultation with the defendant. Dr. Merin also testified that psychologists can get enough information from self-reporting to make a diagnosis. The defendant has not proved his allegation that either the mental health expert or trial counsel failed to secure sufficient background material. The report itself appears complete, and it mentions almost all of the information that was brought out in the evidentiary hearingincluding the defendant's upbringing and chronic drug and alcohol abuse....
The defendant has not proved his allegations that he did not receive adequate mental health assistance. Dr. Merin testified that the report prepared by the defendant's mental health expert at trial, Dr. Diffendale, was sufficient. In fact he testified that it was "pretty good." Dr. Merin testified that Dr. Diffendale had adequate time to perform his evaluation; the report was based upon the appropriate type of information and testing relied upon by psychologists; and Dr. Diffendale followed the procedures normally followed by other clinical psychologists. He testified that additional tests were not needed. This Court accepts Dr. Merin's analysis and assessment of Dr. Diffendale's procedures and report. This Court finds that the defendant did received adequate mental health assistance from Dr. Diffendale.
(Citations omitted.) Based upon our review of the record, we determine that the trial court's findings are supported by competent, substantial evidence and no error exists.
Dr. Maher testified on behalf of Davis at the evidentiary hearing. Dr. Maher relayed his conclusion that Davis was competent to proceed, that he suffered from posttraumatic stress disorder and polysubstance abuse, and that he had suffered from depression. Dr. Maher additionally concluded that Davis suffered from posttraumatic stress disorder at the time of the crime. Dr. Maher opined that at the time of the crime Davis was under the influence of an extreme mental or emotional disturbance and that his capacity to *1124 appreciate the criminality of his conduct or to conform his conduct to the requirements of law were substantially impaired and that Davis qualified for the catch-all statutory mitigator. With regard to the aggravating circumstances found by the trial court, Dr. Maher testified that Davis's posttraumatic stress disorder, his chronic substance abuse, and his acute intoxication at the time of the crime would have significantly impaired his capacity to premeditate the crime. The fact that Davis has now secured the testimony of a more favorable mental health expert simply does not establish that the original evaluation was insufficient. See Carroll v. State, 815 So.2d 601, 618 (Fla.2002) ("The fact that Carroll has now secured the testimony of more favorable mental health experts simply does not establish that the original evaluations were insufficient."); see also Cherry v. State, 781 So.2d 1040, 1052 (Fla. 2000).
Moreover, we note that the trial court concluded it was "not persuaded by Dr. Maher's testimony. Dr. Maher's opinion seems to be based in part on matters that occurred after the trial in 1987. The court found Dr. Merin's testimony to be more persuasive." In conducting our analysis of this issue we are mindful to accord the appropriate deference to the trial court's assessment of these witnesses' testimony. See Stephens v. State, 748 So.2d 1028, 1034 (Fla.1999) ("We recognize and honor the trial court's superior vantage point in assessing the credibility of witnesses and in making findings of fact.... In many instances, the trial court is in a superior position `to evaluate and weigh the testimony and evidence based upon its observation of the bearing, demeanor, and credibility of the witnesses.'") (quoting Shaw v. Shaw, 334 So.2d 13, 16 (Fla.1976)). We conclude that the trial court's rejection of this claim was proper.

VI. Jailhouse Informants
Next, Davis asserts that the trial court erred in denying his claim that the State failed to reveal to his defense counsel that promises of lenient treatment were made to jailhouse informants operating as agents of the State. As a result, Davis contends that the State violated the mandates of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980). Specifically, Davis's claim refers to contacts between the State and Gary Dolan, Kenneth Gardner, and Shannon Stevens.[8]
Davis alleges that Gary Dolan was engaged in negotiations with the State whereby he would receive benefits in exchange for information relating to this case. Davis directs attention to Dolan's testimony at the evidentiary hearing that Assistant State Attorney Beverly Andrews approached him with a list of cases, one of which was Davis's, and indicated that Dolan would receive benefits in exchange for testimony in cases on the list. Davis also relies upon a motion filed by Dolan in his own case wherein Dolan's attorney sought an order from the sentencing court
for the benefit of the Department of Corrections indicating that while confined in the Pinellas County Jail, the Defendant, pursuant to an agreement by the State, shall be entitled to receive *1125 Statutory Good and Gain Time as if he had been incarcerated in the State Prison System. The granting to the Defendant of this good and gain time was an agreement by the State....
Dolan's testimony at the evidentiary hearing was contradicted by Assistant State Attorney Beverly Andringa (formerly Andrews). Andrews testified that she never requested that Dolan obtain information from a particular defendant in return for any promise. Moreover, Andrews testified that throughout her entire career she has never informed any in-custody witness that he or she should obtain information from a particular defendant for a particular promise. With regard to Davis's claim concerning Dolan, the trial court found that "[b]ased upon this inconsistency, and from Dolan's demeanor and obvious grudge against the State, this Court finds his testimony not to be credible. This Court does not believe that the State solicited Dolan as an informant."
Based on our review of the record, we conclude that the trial court's finding is supported by competent, substantial evidence and we therefore affirm the trial court's denial of this claim. See Windom v. State, 886 So.2d 915 (Fla.2004) (holding that the Court will not substitute its judgment for that of the trial court on questions of fact and, likewise, on the credibility of the witnesses and the weight to be given to the evidence by the trial court so long as the trial court's findings are supported by competent substantial evidence); Lightbourne v. State, 841 So.2d 431, 437 (Fla.2003) (holding that when the Court is reviewing an allegation that the State withheld information regarding jailhouse informants, the Court should "defer[ ] to the factual findings made by the trial court to the extent they are supported by competent, substantial evidence, but review[ ] de novo the application of those facts to the law"). Dolan was not presented by the State to testify at Davis's trial and conflicting testimony was presented at the postconviction evidentiary hearing regarding whether he was negotiating a deal with the State. Moreover, the motion Dolan filed with his sentencing court indicating that a deal had been made with the State makes no mention of any efforts by him in Davis's case. Based on the foregoing, we conclude that Davis has failed to establish his claim that Dolan was acting as an agent of the State.
Similar to Davis's allegations regarding Dolan, Davis alleges that the State was involved in negotiations with Kenneth Gardner in exchange for testimony regarding Davis, and that the State knew that Gardner was lying at his deposition. Davis points out that Gardner testified at the evidentiary hearing that he did not want to return to death row, and therefore, he lied in his deposition regarding statements made to him by Davis. Additionally, Davis cites to Gardner's testimony at the evidentiary hearing that he was instructed by the State to obtain information from Davis concerning Davis's case.
Notably, Gardner was never called to testify by the State at Davis's trial. Additionally, Gardner's testimony at the evidentiary hearing that his trial attorney, Frank Lauderback, informed him that the State wanted him to obtain information from Davis was specifically contradicted by attorney Lauderback. At the evidentiary hearing, Lauderback testified that during his representation of Gardner, he never told Gardner that the State wanted Gardner to obtain information from Davis. The trial court found Gardner's "testimony at the evidentiary hearing to be completely unreliable." The trial court also noted that Gardner's testimony that the State had recently threatened him with denial of parole because he had refused to talk to *1126 the State about Davis's case was specifically denied by the investigator that Gardner identified as having made the statement. The trial court's finding that Gardner's testimony was unreliable is supported by competent, substantial evidence in the record and we therefore afford it the appropriate deference because the trial judge was in the best position to hear the live testimony and judge the credibility of the witnesses. See Stephens v. State, 748 So.2d 1028, 1034 (Fla.1999). We therefore conclude that the trial court properly denied this claim.

PETITION FOR WRIT OF HABEAS CORPUS
Davis presents the following claims in his petition for writ of habeas corpus: (1) the State's arguments presented impermissible considerations to the jury, misstated the law and facts, and were inflammatory and improper; (2) the trial court improperly used a prior attempted armed robbery conviction to establish the prior violent felony aggravator; (3) the jury was improperly instructed and the trial court improperly found that the contemporaneous conviction for robbery established the prior violent felony aggravator; (4) the jury was improperly instructed and the trial court improperly considered invalid aggravating circumstances; (5) the introduction of victim impact evidence during the guilt phase violated Davis's Sixth, Eighth and Fourteenth Amendment rights; (6) the trial court failed to file written findings in support of the sentence of death in accordance with the requirements of Florida law; (7) there was insufficient evidence to support a conviction for robbery and any aggravators stemming from that conviction; (8) Davis was denied his right to be present at all critical stages of his capital trial; and (9) that Florida's capital sentencing procedure violates his Sixth Amendment and due process rights. For the reasons that follow, we deny habeas relief.
Habeas petitions are the proper vehicle to advance claims of ineffective assistance of appellate counsel. See Rutherford v. Moore, 774 So.2d 637, 643 (Fla. 2000); Thompson v. State, 759 So.2d 650, 660 (Fla.2000). However, claims of ineffective assistance of appellate counsel may not be used to camouflage issues that could and should have been presented on direct appeal or in a proper postconviction motion. See id. When analyzing the merits of the claim, "[t]he criteria for proving ineffective assistance of appellate counsel parallel the Strickland standard for ineffective trial counsel." Rutherford, 774 So.2d at 643 (quoting Wilson v. Wainwright, 474 So.2d 1162, 1163 (Fla.1985)). Thus, this Court's ability to grant habeas relief on the basis of appellate counsel's ineffectiveness is limited to those situations where the petitioner establishes first, that appellate counsel's performance was deficient and second, that the petitioner was prejudiced because appellate counsel's deficiency compromised the appellate process to such a degree as to undermine confidence in the correctness of the result. See id.
"If a legal issue `would in all probability have been found to be without merit' had counsel raised the issue on direct appeal, the failure of appellate counsel to present the meritless issue will not render appellate counsel's performance ineffective." Rutherford, 774 So.2d at 643 (quoting Williamson v. Dugger, 651 So.2d 84, 86 (Fla.1994)). This is generally true with regard to issues that would have been found to be procedurally barred had they been presented on direct appeal. See id. Moreover, appellate counsel is not required to present every conceivable claim. See Atkins v. Dugger, 541 So.2d 1165, 1167 *1127 (Fla.1989) ("Most successful appellate counsel agree that from a tactical standpoint it is more advantageous to raise only the strongest points on appeal and that the assertion of every conceivable argument often has the effect of diluting the impact of the stronger points.").

I. Prosecutorial Comments
Davis alleges that appellate counsel was ineffective in failing to present on appeal that the prosecution improperly commented on Davis's failure to testify and shifted the burden of proof to Davis. However, this claim was presented by Davis in his pro se brief on direct appeal[9] and was rejected by this Court. See Davis v. State, 586 So.2d 1038, 1041 (Fla.1991). Therefore, the failure of appellate counsel to present this meritless issue on direct appeal did not render appellate counsel's performance ineffective. See Rutherford, 774 So.2d at 643.
Davis next claims that appellate counsel was ineffective in failing to present several instances of alleged improper prosecutorial comments during closing argument, notwithstanding that no objection was raised at trial. Generally, appellate counsel cannot be ineffective for failing to present claims which were not preserved due to trial counsel's failure to object. See, e.g., Johnson v. Singletary, 695 So.2d 263, 266 (Fla.1996) ("[A]ppellate counsel cannot be ineffective for failing to raise claims which were not preserved due to trial counsel's failure to object."); Ferguson v. Singletary, 632 So.2d 53, 58 (Fla. 1993) (same). One exception to this general rule is where the unobjected to comments rise to the level of fundamental error. See Owen v. Crosby, 854 So.2d 182, 188 (Fla.2003). Fundamental error is error that reaches "down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Spencer v. State, 842 So.2d 52, 74 (Fla.2003) (quoting Brown v. State, 124 So.2d 481, 484 (Fla.1960)). To constitute fundamental error, improper comments "must be so prejudicial as to taint the jury's recommended sentence." Fennie v. State, 855 So.2d 597, 609 (Fla.2003) (quoting Thomas v. State, 748 So.2d 970, 985 n. 10 (Fla.1999)).
None of the prosecutorial comments that Davis alleges were improper rise to the level of fundamental error. Davis claims that during the guilt phase closing arguments, the prosecutor improperly referred to Davis as "a cagey little murderer. Little robber, cagey little thief." Although this Court has continually expressed intolerance for improper prosecutorial arguments and comments, when the comments are isolated and not overly prejudicial this Court recognizes the trial court's discretion. See Randolph v. State, 853 So.2d 1051, 1068-69 (Fla.2003). The record reveals that in referring to Davis as a "cagey little murderer" the prosecutor was elaborating on the testimony of Beverly Castle:
Mr. White said that Beverly Castle referred to the Defendant as a little character of some kind. I specifically recall what she said. He was a cagey little character. I suggest to you at this point in the trial, you know that he was more than a little cagey little character. He was a cagey little murderer. Little robber, cagey little thief.
The comment in context was not as egregious as in cases where this Court has found fundamental error. See, e.g., Brooks v. State, 762 So.2d 879, 900 (Fla.2000) (concluding *1128 that the prosecutor's comments were improper where the prosecutor characterized the codefendants as persons of "true deep-seated, violent character"; "people of longstanding violence"; "they commit violent, brutal crimes of violence"; "it's a character of violence"; "both of these defendants are men of longstanding violence, deep-seated violence, vicious violence, brutal violence, hard violence ... those defendants are violent to the core, violent in every atom of their body"); Urbin v. State, 714 So.2d 411, 420 n. 9 (Fla. 1998) (concluding that the prosecutor's comments were improper where the prosecutor cast Urbin as showing his "true, violent, and brutal and vicious character" as a "cold-blooded killer," a "ruthless killer"; and stated several times that Urbin's offenses exhibited "deepseeded [sic] violence. It's vicious violence. It's brutal violence"; and that Urbin was "violent to the core, violent in every atom of his body"). Counsel must be cautioned, however, to argue facts, not labels or characterizations of defendants.
Next, Davis asserts that fundamental error occurred when the prosecutor improperly attacked Davis for exercising his right to assist in his defense:
What else did he tell you? That this Defendant, showed him an article from his hometown paper and first thing he thought, my Lord, this article says he confessed. How can you confess and try to get a lesser crime, a murder two or something less. Explain that to me and what did he tell you? What did he tell Shannon Stevens? I didn't tell them what I told you. I am claiming self-defense. I have my theories. The facts you heard is from a jail house lawyer. Well, there sits one. He is busy on his defenses in this case, doing his legal research, listening to scuttle-butt at the jail to see what defenses work, what defenses didn't work, to decide what's the best defense for him in this case. And what did he think the best defense was? The old man is a queer and made a sexual advance.
Although the above quote can be interpreted as the prosecutor commenting on the defendant's right to assist in his own defense, it also can simply be interpreted as the prosecutor attacking the merits of the defense's theory since the defendant was actively assisting trial counsel in his defense. While arguably improper, it is not the type of comment which reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without such argument. See Card v. State, 803 So.2d 613, 622 (Fla.2001). Moreover, we examine allegedly improper comments in the context of the entire closing argument to determine whether the cumulative effect of the improprieties alleged deprived the defendant of a fair trial. See id. After reviewing the prosecutor's allegedly improper comments in the context of the closing argument in its entirety, we conclude that the comments did not rise to the level of fundamental error that is required to survive a procedural bar.
Davis contends that the prosecutor improperly attempted to select a jury that would not consider Davis's age and would not consider sympathy towards Davis. Specifically, Davis challenges the prosecutor's questions regarding whether the defendant's age would impact the jurors' ability to sit as jurors, whether the jurors would have particular empathy for Davis because he was a young man, and whether the jurors could put aside pity and sympathy in accordance with the law. Asking jurors during voir dire questions pertaining to relevant mitigating circumstances and whether they could put aside pity to comply with the law does not rise to the level of fundamental error. Asking *1129 these questions during voir dire did not reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of these questions. Thus, we deny Davis's fundamental error allegations.
Next, Davis contends that the prosecution improperly attempted to impeach Davis with alleged prior bad acts, which had no bearing on aggravating circumstances. None of the questions now challenged were objected to by trial counsel, and thus the claims were not preserved. Appellate counsel cannot be ineffective for failing to present a claim which was not preserved. See Johnson, 695 So.2d at 266.
Moreover, the questions do not rise to the level of fundamental error. The inquiry was directed to rebut mitigating evidence presented by Davis pertaining to his decision to spare his mother the anguish of testifying, and to rebut Davis's testimony that he was willing and able to live under confinement in prison. See Cooper v. State, 856 So.2d 969, 978 (Fla.2003) (rejecting the defendant's ineffective assistance of appellate counsel claim where defense counsel's presentation opened the door for the State to introduce testimony regarding the defendant's lack of remorse); Gore v. State, 784 So.2d 418, 433 (Fla.2001) (rejecting the defendant's claim that the State improperly questioned him on cross-examination during the penalty phase about collateral crimes allegedly committed by the defendant against other women because the defendant opened the door to this line of questioning by placing his propensity for violence at issue). Therefore, this claim has no merit.

II. Prior Attempted Armed Robbery Conviction
Davis presents various claims with regard to the introduction of evidence and use of the attempted armed robbery he committed in Illinois in 1980 at the age of sixteen to support the prior violent felony aggravator. Specifically, Davis asserts that: (1) trial counsel was ineffective for failing to challenge the prior violent felony aggravator by allowing the State to present an inadmissible juvenile adjudication as an aggravator; (2) the prosecutor improperly argued and presented testimony regarding the juvenile adjudication during the penalty phase to support the prior violent felony aggravator; (3) the trial court improperly used Davis's juvenile adjudication to form the basis of the prior violent felony aggravator; (4) the State suppressed information regarding this prior conviction; and (5) appellate counsel was ineffective in failing to present this issue on direct appeal. It must be noted that Davis's 1980 Illinois attempted armed robbery conviction was considered a juvenile adjudication during the penalty phase, but the trial judge concluded in his sentencing order that the attempted armed robbery was in fact an adult conviction based on evidence presented at the sentencing hearing.
Based on our review of the record on appeal, we conclude that Davis's attempted armed robbery conviction was an adult conviction. As a result of this criminal episode, Davis was sentenced as an adult to probation which was merely supervised by the Illinois juvenile system. Supervision by the juvenile system does not change the fact that Davis was convicted and sentenced as an adult for this crime. Because Davis's attempted armed robbery was in fact an adult conviction, presenting it for consideration as a prior violent felony aggravator was not error. Accordingly, the substance of Davis's claims relating to his attempted armed robbery conviction are meritless and cannot *1130 serve as a basis for an ineffective assistance of trial or appellate counsel claim. See Rutherford, 774 So.2d at 643 (holding that "[i]f a legal issue `would in all probability have been found to be without merit' had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel's performance ineffective") (quoting Williamson, 651 So.2d at 86). This claim has no merit.
Davis also claims that the State committed Brady and Giglio violations by suppressing information and deliberately deceiving the court and jurors by arguing that the prior attempted armed robbery was an adult conviction. In Davis's Brady claim he alleges that a memo by the State's investigator was not turned over to his trial counsel. This memo contained the following language: "Regarding the previous robbery conviction that DAVIS had in Pekin, Illinois, all records have been destroyed according to Detective Soloman because DAVIS was a juvenile at the time." Additionally, a handwritten note from the prosecutor's file contained the following language: "Juvenile Parole violation-83." Even if we were to assume that Davis has adequately established that this information was in the possession of the State and that it was not disclosed to the defense, Davis has failed to establish any prejudice by its nondisclosure. As we previously stated, the trial court properly determined that this prior conviction was in fact an adult conviction. Therefore, Davis has not established that if the above information had been disclosed there is a reasonable probability that the result of the proceeding would have been different. Our confidence has not been undermined. See Strickler, 527 U.S. at 280, 119 S.Ct. 1936 (quoting Bagley, 473 U.S. at 682, 105 S.Ct. 3375). Davis has failed to establish a viable Brady claim with regard to this issue.
Similarly, we also conclude that the trial court properly denied Davis's Giglio claim with regard to the prior attempted armed robbery conviction. Davis has failed to establish that the State knew that any of the testimony that it presented was false. During the penalty phase, the State conceded that based on the information available, the offense at issue was not an adult conviction. However, the State argued, based on the then-operative rule, that juvenile offenses could be used to support the prior violent felony aggravator. During the sentencing hearing, the State supplemented the record with testimony of its investigator to present newly discovered evidence that the previous adjudication was not a juvenile adjudication but was in fact an adult conviction. This change in position by the State does not establish that the testimony that was presented by the State at the penalty phase was known by it to be false. If anything, the above events indicate that the State was in fact abiding by the dictates of Giglio. After discovering evidence that would indicate that the prior offense was an adult conviction, which was inconsistent with the evidence presented at the penalty phase, the State acted appropriately to correct the record. See Tompkins v. State, 872 So.2d 230, 237 n. 9 (Fla.2003) ("Under Giglio, a prosecutor has a duty to correct testimony he or she knows to be false."). Therefore, we conclude that this claim should also be denied.

III. Davis's Contemporaneous Robbery Conviction
Davis asserts that the trial court improperly found that his contemporaneous conviction for robbery was sufficient to satisfy the prior violent felony aggravator and that appellate counsel was ineffective *1131 in failing to present this issue on direct appeal. In its sentencing order, the lower court addressed the robbery conviction as follows:
1. That the aggravating circumstances found by the Court to be present ... are as follows:
....
(b) That the Defendant, MARK A. DAVIS, has been previously convicted of another capital offense or felony involving the use or threat of violence to some person.
(i) This Court specifically finds, based upon the evidence, that the Defendant has been convicted of the crime of Attempted Armed Robbery. The Attempted Armed Robbery was a felony involving the use or threatened use of violence to another person and that although the Defendant was 16 years of age at that time, he was not adjudicated delinquent, but rather convicted of the crime and sentenced to the Department of Corrections as an adult. Additionally, Defendant was found guilty of Robbery by the Jury herein which found him guilty of Murder in the First Degree.

(d) That the capital felony was committed while the Defendant was engaged in the commission of the crime of Robbery.
(f) That the capital felony was committed for pecuniary gain. SPECIAL NOTE: This Court does find that aggravating factors, Florida Statute 921.141(5)(b), (d), and (f) exist in this case. However, the Court consider[s] these three factors as constituting only a single aggravating circumstance.

(Emphasis supplied.)
"Contemporaneous convictions prior to sentencing can qualify as previous convictions of violent felony and may be used as aggravating factors." Wasko v. State, 505 So.2d 1314, 1317 (Fla.1987). However, this Court has previously stated that when the felony at issue is a contemporaneous felony perpetrated against the murder victim, the prior violent felony aggravator does not apply. See id.; see also Bruno v. State, 574 So.2d 76, 81 (Fla.1991) (concluding that the aggravating circumstance of a prior violent felony was inapplicable because the felony in question was the contemporaneous conviction of the robbery of the victim); Schafer v. State, 537 So.2d 988, 991 (Fla.1989) (same). Therefore, the trial court did err in finding that the contemporaneous robbery conviction was sufficient to support the prior violent felony aggravator.
However, the sentencing order indicates that the trial court merged the prior violent felony aggravator, the during the commission of a robbery aggravator, and the pecuniary gain aggravator, and considered them as constituting only a single aggravating circumstance. We therefore conclude that appellate counsel was not deficient for failing to present this issue on appeal because the trial court merged this invalid prior violent felony aggravator with two valid aggravators during the course of a robbery and pecuniary gainand considered all three as only a single aggravating circumstance, thereby rendering any error on the trial court's part harmless. Therefore, appellate counsel should not be deemed deficient for failing to raise this meritless issue on appeal. See State v. Duncan, 894 So.2d 817, 831 (Fla.2004) (holding appellate counsel was not ineffective for failing to raise a meritless claim); Johnson, 695 So.2d at 267 (same). Based on the foregoing, Davis's ineffective assistance of appellate counsel claim is denied.

*1132 IV. Challenges to Statutory Aggravators
Davis asserts that instructing the jury regarding the prior violent felony aggravator, the murder in the course of a felony aggravator, and the pecuniary gain aggravator, as well as the trial court finding these three aggravators had an impermissible tripling effect. This argument has no merit. Contrary to Davis's assertion, the record is clear that the trial court expressly instructed the jury that if they found all three aggravating circumstances were present they "should still only consider them as constituting a single aggravating circumstance." In addition, the sentencing order specifically states that the trial judge merged these three aggravating circumstances and considered them as a single aggravator. See Francis v. State, 808 So.2d 110, 137 (Fla.2001). Therefore, the trial judge neither instructed the jury to triple the aggravating circumstances nor tripled them in his sentencing order. Moreover, notwithstanding the trial court's erroneous finding that the contemporaneous robbery conviction was sufficient to support the prior violent felony aggravator, there was no impermissible doubling of the pecuniary gain aggravator and the murder in the course of a felony aggravator in the instant case because both were merged and considered as a single aggravator. See Chamberlain v. State, 881 So.2d 1087, 1106 (Fla.2004) (stating that when a homicide occurs during the course of a robbery, it is improper for the trial court to find as aggravation both that the homicide was committed during the course of a robbery and that the homicide was committed for pecuniary gain; instead these aggravators should be merged), cert. denied, 544 U.S. 930, 125 S.Ct. 1669, 161 L.Ed.2d 495 (2005).
Davis asserts that the aggravating circumstance that the murder was committed in the course of committing a specified felony is unconstitutional because it constitutes an automatic aggravator and does not narrow the class of persons eligible for the death penalty. This Court has repeatedly rejected this claim. See Ault v. State, 866 So.2d 674, 686 (Fla.2003); Hitchcock v. State, 755 So.2d 638, 644 (Fla. 2000); Blanco v. State, 706 So.2d 7, 11 (Fla.1997). Thus, appellate counsel cannot be ineffective for failing to present a meritless claim.
Davis alleges that the trial court erred in allowing the jury to consider the avoiding or preventing a lawful arrest aggravator when the trial court found that this aggravating circumstance did not exist. This Court has previously rejected this same issue. See Pace v. State, 854 So.2d 167, 181 (Fla.2003) ("The fact that the state did not prove this aggravator to the trial court's satisfaction does not require a conclusion that there was insufficient evidence ... to allow the jury to consider the factor.") (quoting Bowden v. State, 588 So.2d 225, 231 (Fla.1991)). Therefore, this claim is denied.
Davis claims that the jury was given an invalid instruction on the CCP aggravating circumstance and that appellate counsel was ineffective for failing to present this issue on direct appeal. At the time of Davis's trial, the CCP instruction that was given by the court was the standard jury instruction for the CCP aggravator. See Fla. Std. Jury Instr. (Crim.) 7.11 (1987). However, in Jackson v. State, 648 So.2d 85 (Fla.1994), we held that the standard instruction, which was the instruction at the time of Davis's trial, provided insufficient guidance for the jury. See id. at 90. We further held that to assert a claim that the standard CCP jury instruction was unconstitutionally vague, a specific objection must have been made at trial and presented again on appeal. See id. This Court *1133 later specified that "[t]o preserve the error for appellate review, it is necessary both to make a specific objection or request an alternative instruction at trial, and to raise the issue on appeal." Walls v. State, 641 So.2d 381, 387 (Fla.1994). In 1997, we reiterated that to preserve a claim that a CCP instruction is unconstitutionally vague, the objection "must attack the instruction itself, either by submitting a limiting instruction or making an objection to the instruction as worded." Pope v. State, 702 So.2d 221, 223-24 (Fla.1997).
Davis's Jackson claim was not properly preserved because counsel objected at trial that there was insufficient evidence that the murder was cold, calculated, and premeditated, but neither specifically objected to the instruction as worded, nor did he request or submit an alternative or limiting instruction as required by Jackson and its progeny. We faced a similar scenario in Brown v. State, 755 So.2d 616 (Fla.2000). In Brown, defense counsel neither submitted a limiting instruction nor specifically objected that the CCP instruction was unconstitutionally vague. See id. We held in accordance with Jackson that defense counsel's objection did not preserve this issue for appellate review. See Brown, 755 So.2d at 622-23; see also Jones v. State, 690 So.2d 568, 571 (Fla.1996). Based on the foregoing, we conclude that Davis's Jackson claim is without merit.
Davis asserts that appellate counsel was ineffective in failing to present this claim on appeal. Appellate counsel cannot be ineffective for failing to present a claim which was not preserved. See Johnson, 695 So.2d at 266. Davis has not asserted that appellate counsel's failure to present this issue rises to the level of fundamental error, but any such claim would be meritless. In Jackson, this Court found the CCP instruction to be unconstitutionally vague but did not find that this was fundamental error. See 648 So.2d at 90. Moreover, in Davis's direct appeal we found that the facts supported the finding of cold, calculated, and premeditated. See Davis, 586 So.2d at 1040. Therefore, we conclude that there is no reasonable possibility that the constitutionally infirm CCP instruction given at Davis's trial contributed to the sentence.
Davis asserts that there was insufficient evidence that the murder was committed for the purpose of financial gain and claims that the jury instruction was vague. Davis was found guilty of robbery, and this Court on direct appeal determined that the robbery conviction was supported by competent, substantial evidence in the record and affirmed the conviction. See Davis, 586 So.2d at 1039 n. 1. The evidence establishing the basis for the robbery conviction was also sufficient to support the pecuniary gain aggravating factor. See Finney v. State, 660 So.2d 674, 680 (Fla. 1995) ("In order to establish this aggravating factor, the State must prove beyond a reasonable doubt that the murder was motivated, at least in part, by a desire to obtain money, property, or other financial gain."); see also Henyard v. State, 689 So.2d 239, 253 (Fla.1996) (concluding that the trial court did not err in finding the pecuniary gain aggravating factor where evidence showed that the defendant bragged that he was going to steal a car, kill its owner, and use it to drive to his father).[10] At trial, no challenge was made *1134 to the sufficiency or vagueness of the instruction, and therefore this claim would have been procedurally barred on direct appeal. Davis has not alleged fundamental error, and thus his claim of ineffective assistance of appellate counsel is meritless.

V. Victim Impact Evidence
Davis next asserts that the trial court erred in allowing the introduction of victim impact evidence during the guilt phase and that appellate counsel was ineffective in failing to present this issue on direct appeal. During the guilt phase, the State presented the victim's son-in-law, Raymond Hansbrough. Davis claims that the following testimony provided by Hansbrough was violative of his rights and prejudicialthat the victim had seven children (five girls and two boys), that the victim's nickname was Skip, that the victim had a little dog, and that the victim had retired from NASA. Davis did not object to this testimony specifically, and thus this claim would have been procedurally barred on direct appeal.
Absent fundamental error, appellate counsel cannot be ineffective for failing to present a claim which was not preserved. See, e.g., Johnson, 695 So.2d at 266. The testimony cited by Davis does not rise to the level of fundamental error. See Kormondy v. State, 845 So.2d 41, 54 (Fla.2003) (concluding that there was no fundamental error where testimony was presented of the victim giving food to an elderly woman; helping a man whose car was repossessed; caring for his younger adopted son who was an amputee; and protecting a friend's daughter who was smaller than her playmates by carrying her on his shoulders and calling her a "queen"); Sims v. State, 602 So.2d 1253, 1257 (Fla.1992) (concluding that a witness's statement that she did not know the victim's family but knew he had children does not constitute victim impact evidence). Moreover, this minimal testimony, which only spans six pages in the record, did not become an impermissible feature of the trial. See Kormondy, 845 So.2d at 54. Based on the foregoing, this claim is denied.

VI. Trial Court's Sentencing Order
Davis next asserts that his appellate counsel was ineffective for failing to present on appeal the trial court's failure to file its written order prior to or concurrent with the oral pronouncement of sentence as required by our opinion in Grossman v. State, 525 So.2d 833 (Fla.1988). This claim is without merit. In Grossman, we established a procedural rule that "all written orders imposing a death sentence be prepared prior to the oral pronouncement of sentence for filing concurrent with the pronouncement." Id. at 841. The new procedural rule became effective thirty days after the Court's decision became final. See id.[11] In addition, we have stated that "[s]hould a trial court fail to provide timely written findings in a sentencing proceeding taking place after our decision in Grossman, we are compelled to remand for imposition of a life sentence." Stewart v. State, 549 So.2d 171, 176 (Fla. 1989) (emphasis supplied).
Davis's 1987 penalty phase proceeding occurred before our opinion in Grossman. *1135 Specifically, Davis was sentenced on January 30, 1987, and the trial judge's written findings were filed on March 18, 1987. Therefore, because Davis's sentencing proceeding and sentencing order were completed prior to our decision in Grossman, the new rule established in Grossman did not apply. See Holton v. State, 573 So.2d 284, 291 (Fla.1990) (concluding that because the sentencing proceeding in Holton's case took place prior to this Court's decision in Grossman the actions of the trial court should be viewed in light of the standards established pre-Grossman); Stewart v. State, 558 So.2d 416, 421 (Fla. 1990) (same).
Under the rule existing prior to Grossman the trial court, after orally pronouncing a death sentence, was only required to enter the written sentencing order in a timely manner. See Van Royal v. State, 497 So.2d 625, 628 (Fla.1986). In Grossman, this Court permitted the death sentences to stand even though the trial judge did not enter his written findings until three months after orally sentencing the defendant to death. See 525 So.2d at 841. In the present case, the time between the oral pronouncement of Davis's sentence and the entry of the trial court's written sentencing order was approximately six weekswell within the three-month time period that we held permissible in Grossman. See id.; see also Muehleman v. State, 503 So.2d 310, 317 (Fla.1987) (permitting a death sentence to stand even though the written findings were filed two and one-half months after sentencing). Accordingly, we conclude that this claim would not have warranted relief. We cannot conclude that appellate counsel was ineffective for failing to raise a meritless argument on appeal. See State v. Duncan, 894 So.2d 817, 831 (Fla.2004) (holding appellate counsel was not ineffective for failing to raise a meritless claim); Johnson, 695 So.2d at 267 (same).

VII. Sufficiency of Evidence to Support Davis's Robbery Conviction
Davis alleges that there was insufficient evidence to support his conviction for robbery and that his appellate counsel was ineffective for failing to present this claim on direct appeal. This claim is without merit. In our opinion affirming Davis's conviction on direct appeal, we specifically addressed Davis's robbery conviction and stated that "[a]lthough appellant does not challenge his grand theft and robbery convictions, they are supported by competent substantial evidence in the record and we affirm them." Davis v. State, 586 So.2d 1038, 1039 n. 1 (Fla.1991). Given our conclusion that there was competent, substantial evidence to support Davis's robbery conviction, appellate counsel was not ineffective for failing to raise this meritless issue on appeal. See Duncan, 894 So.2d at 831; Johnson, 695 So.2d at 267.

VIII. Absence from Critical Stages of Trial
Davis's claim that he was not present during jury selection and the exercise of peremptory challenges was presented and denied on Davis's direct appeal. Prior to our decision in Davis's direct appeal, we remanded the case on this issue with instructions for a hearing to be conducted to determine whether Davis was in fact absent from the courtroom. Subsequent to this hearing, this Court, in denying this claim, noted that
[t]he trial court reporter, the trial judge, appellant, his trial counsel, and counsel for the state testified at the hearing. The trial judge appointed for these supplemental proceedings found that appellant was in the courtroom during the time in question. This finding is supported *1136 by competent substantial evidence; we therefore find the issue to be without merit.
Davis, 586 So.2d at 1041. In his habeas petition, Davis now alleges that his appellate counsel was "ineffective for failing to pursue this issue and bringing the truth to light," and for "fail[ing] to subject the State's case to a meaningful adversarial testing."
Davis's claim is without merit. Davis's attempt to couch this claim as an ineffective assistance of counsel claim is improper. We have warned against attempts to use habeas corpus proceedings as a vehicle to relitigate claims that have already been rejected by the Court. See Parker v. Dugger, 550 So.2d 459, 460 (Fla. 1989) ("It is important to note that habeas corpus petitions are not to be used for additional appeals on questions which could have been, should have been, or were raised on appeal or in a rule 3.850 motion, or on matters that were not objected to at trial."). This claim received full review on appeal, as is evident from our decision to remand the issue for a hearing. See Davis, 586 So.2d at 1041. We hold that this claim is procedurally barred because it was addressed and denied on direct appeal and we further conclude that appellate counsel's performance was not ineffective as it relates to this issue.

IX. Other Claims
Davis asserts that Florida's capital sentencing scheme violates his Sixth Amendment right and his right to due process under the holding of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). We addressed the question of whether Florida's capital sentencing scheme violates the United States Constitution under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring, in Bottoson v. Moore, 833 So.2d 693 (Fla.2002), and King v. Moore, 831 So.2d 143 (Fla.2002), and denied relief. See also Jones v. State, 845 So.2d 55, 74 (Fla.2003). We conclude that Davis is likewise not entitled to relief on this claim. Moreover, the jury in Davis's case convicted him of robbery, which forms the basis of the aggravator of murder committed in the course of a felony. Thus, Davis would not qualify for the relief sought. See Doorbal v. State, 837 So.2d 940, 963 (Fla.) (rejecting Ring claim where one of the aggravating circumstances found by the trial judge was defendant's prior conviction for a violent felony), cert. denied, 539 U.S. 962, 123 S.Ct. 2647, 156 L.Ed.2d 663 (2003); see also Johnson v. State, 904 So.2d 400 (Fla.2005) (holding that Ring does not apply retroactively).
Davis claims that the trial court's penalty phase instructions substantially diminished the jurors' sense of responsibility for determining Davis's sentence. This claim is procedurally barred because a claim of error regarding the instructions given by the trial court should have been presented on direct appeal and is not cognizable through collateral attack. See Stewart v. State, 801 So.2d 59, 64 n. 6 (Fla.2001) (concluding that appellant's claim that penalty phase jury instructions diminished the jury's sense of responsibility in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), was procedurally barred because it should have been presented on direct appeal); Gorham v. State, 521 So.2d 1067, 1070 (Fla.1988) (same). Procedural bar notwithstanding, Davis's claim is meritless. Davis does not allege that the trial judge deviated from the standard jury instruction, which this Court has determined withstands scrutiny under Caldwell. See Card v. State, 803 So.2d 613, 628 (Fla.2001) (concluding that appellant's claim that "the standard jury instructions that refer to the *1137 jury as advisory and that refer to the jury's verdict as a recommendation violate Caldwell" was without merit).
Davis asserts his death sentence is also invalid because the elements of the offense necessary to establish capital murder were not charged in the indictment. Appellate counsel cannot be ineffective for failing to present this meritless issue. See Freeman v. State, 761 So.2d 1055, 1071 (Fla.2000) (rejecting appellant's argument that appellate counsel was ineffective for failing to argue that the trial court erred in denying the pretrial motion to dismiss the indictment because it did not specifically charge felony murder and only charged him with premeditated murder); see also Gudinas v. State, 693 So.2d 953, 964 (Fla. 1997) ("We have repeatedly rejected claims that it is error for a trial court to allow the State to pursue a felony murder theory when the indictment gave no notice of the theory."). Thus, no habeas relief is warranted.

CONCLUSION
For the foregoing reasons, we affirm the trial court's denial of Davis's rule 3.850 motion and deny Davis's petition for writ of habeas corpus.
It is so ordered.
WELLS, LEWIS, CANTERO, and BELL, JJ., concur.
PARIENTE, C.J., concurs in result only with an opinion, in which ANSTEAD, J., concurs.
QUINCE, J., recused.
PARIENTE, C.J., concurring in result only.
Although I agree with the denial of postconviction relief based on the failure to demonstrate prejudice, I do not agree with the majority's analysis of trial counsel's performance in the penalty phase. Specifically, I conclude that counsel's penalty phase preparation fell outside the wide range of professional competent assistance under the standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), and most recently in Rompilla v. Beard, 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005).
In this case, as the majority notes, counsel spent less than eleven hours preparing for the penalty phase. Although time alone is not dispositive of quality, what counsel did with that time is even more troubling. Counsel's only "independent investigation" was to interview Davis and his mother before the penalty phase. Evidently, he never contemplated calling witnesses other than Davis's mother to testify in the penalty phase. Without interviewing other potential penalty-phase witnesses or investigating other possibilities, counsel could not have made an informed decision. Because Davis refused at the last minute to allow counsel to call his mother to testify, Davis himself remained the sole available defense penalty-phase witness. This was not reasonable penalty phase preparation, even allowing for the distorting effects of hindsight.
The failure to interview additional friends and family members to flesh out Davis's unfortunate and troubled family background is indefensible. Testimony by these witnesses could have corroborated and added to Davis's testimony, which would be seen as self-serving, and that of his mother, whose bias would also have been obvious. Testimony by several witnesses would have carried significantly more persuasive force than merely presenting the defendant or his mother. Having failed to explore other avenues, counsel found himself without options to pursue.
*1138 "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691, 104 S.Ct. 2052. The focus should be "whether the investigation supporting counsel's decision not to introduce mitigating evidence of [the defendant's] background was itself reasonable." Wiggins, 539 U.S. at 523, 123 S.Ct. 2527. In Rompilla, the Court recognized that "the duty to investigate does not force defense lawyers to scour the globe on the off-chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." 125 S.Ct. at 2463. Trial counsel in this case neither conducted a reasonable investigation into Davis's family background nor made a reasonable decision that such investigation would be wasteful or unnecessary. Accordingly, I would find counsel's performance in failing to investigate Davis's background deficient under Strickland and Wiggins. However, in light of the very significant aggravation in this case, Davis has not demonstrated that these witnesses would have enhanced the mitigation to a point creating a probability, sufficient to undermine confidence in the outcome, of a sentence of life rather than death. Therefore, I conclude no prejudice has been shown and thus concur in the denial of the ineffective assistance claim.
ANSTEAD, J., concurs.
NOTES
[1] The trial court specifically noted that Davis had been convicted of the crime of attempted armed robbery when he was sixteen years of age but that he was convicted and sentenced as an adult. Additionally, the trial court noted that Davis was found guilty of robbery in the instant case.
[2] Huff v. State, 622 So.2d 982 (Fla.1993).
[3] Specifically, the trial court determined an evidentiary hearing was warranted for the following: (1) ineffective assistance of trial counsel during pre-trial, voir dire and guilt phase of trial; (2) due process violations arising from the State's withholding of material and exculpatory evidence and presenting misleading evidence; (3) violations of Davis's Sixth Amendment rights by the State's failure to reveal that it had made promises to jailhouse informants or that they were operating as agents of the State; (4) prosecutorial misconduct involving improper comments made to the jury along with the introduction of inadmissible evidence in addition to ineffective assistance of trial counsel for failure to object to these alleged errors; (5) inadequate mental health expert assistance along with ineffective assistance of trial counsel for failure to provide the background materials necessary for an adequate evaluation; (6) ineffective assistance of penalty phase counsel for failure to adequately investigate and present mitigating evidence; (7) ineffective assistance of trial counsel for failure to object to the introduction of the details of a prior felony during the penalty phase; and (8) ineffective assistance of trial counsel for failure to object to the trial court admitting victim impact evidence during both the guilt and penalty phases of trial.
[4] The trial court found Davis made a voluntary choice not to have his mother testify.
[5] Specifically, at the evidentiary hearing postconviction counsel presented the testimony of Rick Hall, a childhood friend who testified to Davis's alcohol and drug abuse and violent tendencies; Johansae Hayes, another childhood friend who testified to the poor financial status of the Davis family, verbal abuse imposed on Davis by his father, and Davis's father's physical abuse of Davis's older brother, Tracy; John Davis, Davis's father, who testified to his own alcoholism and abuse of family members; Mary Blinn, Tracy Davis's ex-wife, who testified regarding Davis's addiction to drugs and alcohol and the prior criminal activity he engaged in with Tracy; Michael Davis, Davis's oldest brother, who testified to the family's privation, his father's alcoholism, and his father's verbal and physical abuse of his family (including that Davis witnessed his father abuse his mother and, as one of the youngest children, suffered the brunt of his father's abuse); Shari Uhlman, Davis's younger sister, who reiterated testimony regarding the family's finances and her father's verbal and physical abuse; Candace Louis, Davis's older sister, who also testified to her father's alcoholism and abuse; and, finally, Mary Jo Buchanan, Davis's cousin, who testified to Davis's father's alcoholism and abuse of his wife.
[6] We also reject Davis's claim that his trial counsel was ineffective for failing to obtain a mental health expert to testify regarding an intoxication defense. As noted, Dr. Diffendale was retained by White to evaluate Davis and there is clear evidence in the record supporting counsel's decision not to present Dr. Diffendale at trial.
[7] To establish a Giglio violation a defendant must show that: (1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material. See Guzman v. State, 868 So.2d 498, 505 (Fla.2003); Ventura v. State, 794 So.2d 553, 562 (Fla.2001). A statement is material if there is any reasonable likelihood that it could have affected the judgment of the jury. See Guzman, 868 So.2d at 506. The State bears the burden of proving that the presentation of the false testimony was harmless beyond a reasonable doubt. See id.
[8] Davis simply reasserts his allegations concerning Stevens' purportedly false trial testimony that he did not receive a deal in exchange for that testimony, and that the State suppressed notes from the file indicating a deal was being negotiated. This claim was analyzed and rejected above.
[9] Two appellate briefs were filed on direct appeal, one by White and a pro se brief by Davis. This Court addressed and rejected all of the issues raised in Davis's pro se brief.
[10] Moreover, the evidencethat Davis told Kimberly Rieck, a resident of the apartment complex that he planned to get the victim drunk and "see what he could get out of him"; that during approximately the same time Davis told Beverly Castle, another resident, that he was going to "rip him [the victim] off and do him in"; and that shortly thereafter, the victim and Davis were seen arguing about money and they went to the victim's apartmentwas sufficient to prove the pecuniary gain aggravating circumstance supporting the death sentence. See Davis, 586 So.2d at 1040.
[11] Grossman was decided on February 18, 1988, and rehearing was denied on May 25, 1988. See 525 So.2d at 833.