RAMIREZ, J.
(dissenting).
This case can go down under the “anything goes” department when it comes to a criminal prosecution of an unsympathetic defendant. All you need is a trial judge with a flexible outlook on what constitutes relevant evidence and an appellate panel with a bountiful view of trial court discretion.
Yosvani Torres, the unsympathetic defendant, appeals his conviction for two counts of sexual battery on a victim under the age of twelve. The trial judge allowed a Williams Rule witness to testify about the permanent damage she suffered as a result of being the victim of a sexual assault. We have today expanded the admissibility of victim impact testimony from the penalty phase in capital cases to the guilt phase of a criminal trial.
The State charged Torres with committing a sexual battery on the victim, N.R. The trial court allowed the prosecution to present the testimony at trial of J.T., who had been the victim of sexual battery in 1998. J.T., who was 20 years old at the time of trial, testified that when she was seven years of age, Torres had touched both her vagina and breasts. Not satisfied with the devastating impact of the Williams Rule testimony, the prosecution sought to elicit testimony as to how the experience she had with Torres affected her. There was a long sidebar discussion at which defense counsel objected, arguing that the witness was called to give Williams Rule testimony and the evidence had been elicited. Any further testimony as to how she had suffered was irrelevant and highly prejudicial. The State argued that it was relevant for the purpose of assessing her credibility. The trial court stated that “I didn’t see the relevance when the question was asked ... However, after listening to [the prosecutor’s] explanation, these jurors do have to asses *536 [sic] the credibility of the witness [as to] what she has said and perhaps how it has effected [sic] her is part of their ability [credibility?] analysis to see if what she is saying is true.” J.T. then testified:
It basically changed my life. It changed who I am mentally and emotionally. It is part of the reason that I am majoring in criminal justice and I used this situation, traumatizing as it’s been, I used it in a positive manner to help me better my future.
I do not I will not be around men alone, now. I do not trust men and I am afraid to be by myself at any given point, I do not like anything the only man I am comfortable around is my dad and brothers and nobody new. I cannot be alone with them no matter who they are and I basically just even though it changed me and something that has been mentally a roller coaster I use it to help me get through a lot of situations and helps me help other people.
In my view, this type of testimony is not allowed in any criminal prosecution. The only exception to this can be found in section 921.141(7), Florida Statutes (2010), which involves victim impact evidence, and even then, the testimony is only admissible in the penalty phase of the trial after the State “has provided evidence of the existence of one or more aggravating circumstances.”
Not only is this type of evidence not admissible in any prosecution, it is particularly egregious in this case because it had absolutely no probative value. The proffered reason — to evaluate J.T.’s credibility — is totally inapplicable in this ease because J.T.’s credibility was never challenged. J.T.’s honesty was never disputed, and the incident or incidents in 1998 were never contested. In fact, defense counsel did not cross examine J.T. Defense counsel did not ask a single question. Unless we have different rules of evidence in the prosecution of sexual battery on minors, we are now going to allow victims of crimes to testify as to the impact the traumatic event had on their lives. Robbery victims can recount how they will no longer go out at night, burglary victims will testify that they are now terrified to leave their homes, embezzlement victims will recount how they are afraid to talk to strangers and all rape victims will be able to tell the juries how the crime has devastated their lives.
A review of the transcript of the trial, or the State’s brief, does not disclose how the testimony in this case added to the credibility of J.T. I begin with the assumption that all victims of sexual molestation are affected by the experience, but how does the intensity of the impact affect their credibility? Are victims in denial, who claim that the incident has not affected them less credible than those that admit that the abuse has impacted their lives? I do not believe so.
Another aspect of this case is that pursuant to section 794.022(3), Florida Statutes (2010), the State was able to obtain a ruling in limine which prevented Torres from eliciting any evidence regarding J.T.’s past sexual abuse by another perpetrator, Juan Carlos Morales. How do we know that her life was changed by her experience with Torres and not Morales, or that it was a combination of both? The Morales incident was properly excluded as irrelevant, but the effect either or both incidents had on J.T.’s life was equally irrelevant.
In its brief, the State argued that the trial court did not err because the trial court gave a curative instruction and the testimony was not made a feature of the trial. There is nothing in the Evidence Code that turns inadmissible evidence into admissible simply by giving a curative in *537 struction and not allowing the proponent to make it a feature of the case. The State has not cited a single case in which a victim of a crime has been allowed to testify as to how the incident has affected their lives. One would think with the thousands of criminal prosecutions and the hundreds of reported cases in the State of Florida, the Office of the Attorney General could have' found at least one that approved of what occurred here.
Instead, the State has cited to us cases from other states. The first case cited is State v. Radjenovich, 138 Ariz. 270, 674 P.2d 333 (1983), and it lends no support. In fact, there the prosecution introduced precisely the same evidence that the State successfully excluded through its in limine motion — that the victim had been previously raped. Id. at 335. Additionally, the court ruled that, because the evidence had not been objected to at trial on the same grounds as on appeal, the issue had been waived. Id. at 336. Third, in its dicta, the court stated that the evidence of the prior rape and the fact that “[t]he victim’s marked personality change after her encounter with defendant was relevant to the issue of consent in that it corroborated the credibility of the victim.” Id. (emphasis added). Here, Torres never argued consent nor attacked J.T.’s credibility.
The State next cites to State v. Blackman, 2007 WL 2325830 (Ohio App.2007), a non-reported case. This citation not only lends no support for the State’s argument, it actually is helpful to Torres. It states that “[t]he courts exclude victim impact evidence because it is irrelevant and immaterial to the guilt or innocence of the accused' — -it merely serves to inflame the passion of the trier of fact.” Id. at 7. The court then examined the issue in the context of ineffective assistance of counsel for failing to object to the admission of the victim impact evidence. Id. at 7-8. It then concluded that the victim’s personality changes during the time frame the offenses occurred were relevant and therefore counsel had no duty to object to the testimony. Id. at 8.
Next, the State cites to State v. Thompson, 668 S.W.2d 179, 181 (Mo.App. E.D. 1984) for the proposition that a rape victim who would not spend another night in her apartment after the rape, was relevant to establish a lack of consent. Again, Torres never alleged that he had consensual sex with the seven-year-old J.T.
The State then disingenuously cites to Davis v. State, 928 So.2d 1089, 1134 (Fla.2005), for the proposition that no reversible error occurred where the victim testified that the victim had seven children (five girls and two boys), that the victim’s nickname was Skip, that the victim had a little dog, and that the victim had retired from NASA. The Florida Supreme Court actually held that the admission of this testimony did not constitute fundamental error, as no objection was made to its admission. Id. The opinion seems to take for granted that the testimony was otherwise inadmissible. There is also no question that Torres’ counsel objected to the victim impact evidence on relevance grounds.
Finally, the State cites to Pankow v. State, 895 So.2d 1149 (Fla. 5th DCA 2005) as “helpful”, but it is beyond my intellectual abilities to surmise how this case is relevant to our analysis. There, the defendant argued error in permitting testimony that when the child’s custodian would attempt to bathe the victim in the tub, the victim would shake uncontrollably and scream “hot, hot, hot.” Id. at 1150. The defense argued that this testimony implied that defendant injured the victim by intentionally placing her in a tub of hot water and was therefore unduly prejudicial. Id. The court concluded that this testimony indicated that the child was frightened of *538 taking a bath because of the fear of being burned, for whatever reason, and therefore the testimony’s probative value outweighed the prejudice to the defendant. Id. at 1150-51.
I have no sympathy for Torres. He is an admitted sex offender who preyed upon a seven year old girl. He probably also abused N.R. If we, as a society, decide that sex offenders are not entitled to a fair trial, let’s come out and say so. But if the rules of evidence apply equally to all, as we profess they do, this victim impact evidence was clearly inadmissible. The only issue should be whether the admission of this evidence constituted harmless error. And I cannot say beyond a reasonable doubt that the admission of this evidence did not contribute to the jury verdict.
In this case, N.R.’s credibility was the only issue the jury had to resolve. There were no witnesses other than N.R. to the alleged assault nor was there any physical evidence to support N.R.’s allegations. The law allowed the State to introduce evidence from J.T. that she had been sexually assaulted by Torres in a similar manner approximately thirteen years prior to the assault in this case to corroborate N.R.’s testimony. However, what the law did not allow was for the State to introduce irrelevant prejudicial testimony that the assault committed against J.T. changed her life forever and has prevented her from ever having a normal relationship with a male. This evidence was meant to inflame the jury and distract them from its difficult job of assessing N.R.’s credibility. I believe it is impossible to determine how this inflammatory evidence ultimately affected the jury’s decision.